I
Petitioner Allen Ryan Alleyne and an accomplice devised a plan to rob a store manager as he drove the store's daily deposits to a local bank. By feigning car trouble, they tricked the manager to stop. Alleyne's accomplice approached the manager with a gun and demanded the store's deposits, which the manager surrendered. Alleyne was later charged with multiple federal offenses, including robbery affecting interstate commerce, 18 U.S.C. § 1951(a), and using or carrying a firearm in relation to a crime of violence, § 924(c)(1)(A). Section 924(c)(1)(A) provides, in relevant part, that anyone who "uses or carries a firearm" in relation to a "crime of violence" shall:
"(i) be sentenced to a term of imprisonment of not less than 5 years;
*104 "(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and *2156 "(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years."
The jury convicted Alleyne. The jury indicated on the verdict form that Alleyne had "[u]sed or carried a firearm during and in relation to a crime of violence," but did not indicate a finding that the firearm was "[b]randished." App. 40.
The presentence report recommended a 7-year sentence on the § 924(c) count, which reflected the mandatory minimum sentence for cases in which a firearm has been "brandished," § 924(c)(1)(A)(ii). Alleyne objected to this recommendation. He argued that it was clear from the verdict form that the jury did not find brandishing beyond a reasonable doubt and that he was subject only to the 5-year minimum for "us[ing] or carr[ying] a firearm." Alleyne contended that raising his mandatory minimum sentence based on a sentencing judge's finding that he brandished a firearm would violate his Sixth Amendment right to a jury trial.
The District Court overruled Alleyne's objection. It explained that, under Harris, brandishing was a sentencing factor that the court could find by a preponderance of evidence without running afoul of the Constitution. It found that the evidence supported a finding of brandishing, and sentenced Alleyne to seven years' imprisonment on the § 924(c) count. The Court of Appeals affirmed, likewise noting that Alleyne's objection was foreclosed by Harris . 457 Fed.Appx. 348 (C.A.4 2011) (per curiam ).
II
The Sixth Amendment provides that those "accused" of a "crime" have the right to a trial "by an impartial jury." This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt. United States v. Gaudin, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) ; In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The substance and scope of this right depend upon the *105 proper designation of the facts that are elements of the crime.
A
The question of how to define a "crime"-and, thus, how to determine what facts must be submitted to the jury-has generated a number of divided opinions from this Court. The principal source of disagreement is the constitutional status of a special sort of fact known as a "sentencing factor." This term was first used in McMillan v. Pennsylvania, 477 U.S. 79, 86, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), to refer to facts that are not found by a jury but that can still increase the defendant's punishment. Following McMillan 's introduction of this term, this Court has made a number of efforts to delimit its boundaries.
McMillan initially invoked the distinction between "elements" and "sentencing factors" to reject a constitutional challenge to Pennsylvania's Mandatory Minimum Sentencing Act, 42 Pa. Cons.Stat. § 9712 (1982). That law provided that anyone convicted of certain felonies would be subject to a mandatory minimum sentence if the judge found, by a preponderance of evidence, that the person " 'visibly possessed a firearm' " in the course of committing specified crimes. 477 U.S., at 81, n. 1, 106 S.Ct. 2411. While the Court acknowledged that there were constitutional limits to the State's ability to "defin[e] crimes and prescrib[e] penalties," it found that the Commonwealth had permissibly defined visible possession as a sentencing factor, rather than an element. Id., at 86, 106 S.Ct. 2411. In the Court's view, this allowed the judge, rather than *2157 the jury, to find this fact by a preponderance of evidence without violating the Constitution.
McMillan did not address whether legislatures' freedom to define facts as sentencing factors extended to findings that increased the maximum term of imprisonment for an offense. We foreshadowed an answer to this question in Jones v. United States, 526 U.S. 227, 243, n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), but did not resolve the issue until Apprendi . There, we identified a concrete limit on the types of facts that legislatures may designate as sentencing factors.
*106 In Apprendi, the defendant was sentenced to 12 years' imprisonment under a New Jersey statute that increased the maximum term of imprisonment from 10 years to 20 years if the trial judge found that the defendant committed his crime with racial bias. 530 U.S., at 470, 120 S.Ct. 2348. In defending its sentencing scheme, the State of New Jersey argued that, under McMillan, the legislature could define racial bias as a sentencing factor to be found by the judge. We declined to extend McMillan that far. We explained that there was no "principled basis for treating" a fact increasing the maximum term of imprisonment differently than the facts constituting the base offense. 530 U.S., at 476, 120 S.Ct. 2348. The historic link between crime and punishment, instead, led us to conclude that any fact that increased the prescribed statutory maximum sentence must be an " element" of the offense to be found by the jury. Id., at 483, n. 10, 490, 120 S.Ct. 2348. We, thus, found that Apprendi's sentence had been unconstitutionally enhanced by the judge's finding of racial bias by a preponderance of evidence. Id., at 491-492, 120 S.Ct. 2348.
B
While Apprendi only concerned a judicial finding that increased the statutory maximum, the logic of Apprendi prompted questions about the continuing vitality, if not validity, of McMillan 's holding that facts found to increase the mandatory minimum sentence are sentencing factors and not elements of the crime. We responded two years later in Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524, where we considered the same statutory provision and the same question before us today.
In Harris, the defendant was charged, under § 924(c)(1)(A), with carrying a firearm in the course of committing a drug trafficking crime. The mandatory minimum sentence based on the jury's verdict alone was five years, but the District Court imposed a 7-year mandatory minimum sentence based on its finding, by a preponderance of evidence, that the defendant also brandished the firearm. As in this case, *107 Harris challenged his sentence on the ground that the 7-year mandatory minimum sentence was unconstitutional under Apprendi, even though the judge's finding did not alter the maximum sentence to which he was exposed. Harris, supra, at 551, 122 S.Ct. 2406
The Court declined to apply Apprendi to facts that increased the mandatory minimum sentence but not the maximum sentence. 536 U.S., at 557, 122 S.Ct. 2406. In the Court's view, judicial factfinding that increased the mandatory minimum did not implicate the Sixth Amendment. Because the jury's verdict "authorized the judge to impose the minimum with or without the finding," ibid., the Court was of the view that the factual basis for increasing the minimum sentence was not " 'essential' " to the defendant's punishment. Id., at 560-561, 122 S.Ct. 2406 (plurality opinion). Instead, it merely limited *2158 the judge's "choices within the authorized range." Id., at 567, 122 S.Ct. 2406. From this, the Court drew a distinction between "facts increasing the defendant's minimum sentence and facts extending the sentence beyond the statutory maximum," id., at 566, 122 S.Ct. 2406. The Court limited Apprendi 's holding to instances where the factual finding increases the statutory maximum sentence.
III
Alleyne contends that Harris was wrongly decided and that it cannot be reconciled with our reasoning in Apprendi . We agree.
A
The touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an "element" or "ingredient" of the charged offense. United States v. O'Brien, 560 U.S. 218, ----, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010); Apprendi,supra, at 483, n. 10, 120 S.Ct. 2348; J. Archbold, Pleading and Evidence in Criminal Cases 52 (5th Am. ed. 1846) (hereinafter Archbold). In Apprendi, we held that a fact is by definition *108 an element of the offense and must be submitted to the jury if it increases the punishment above what is otherwise legally prescribed. 530 U.S., at 483, n. 10, 120 S.Ct. 2348. While Harris declined to extend this principle to facts increasing mandatory minimum sentences, Apprendi 's definition of "elements" necessarily includes not only facts that increase the ceiling, but also those that increase the floor. Both kinds of facts alter the prescribed range of sentences to which a defendant is exposed and do so in a manner that aggravates the punishment. 530 U.S., at 483, n. 10, 120 S.Ct. 2348; Harris, supra, at 579, 122 S.Ct. 2406 (THOMAS, J., dissenting). Facts that increase the mandatory minimum sentence are therefore elements and must be submitted to the jury and found beyond a reasonable doubt.
1
At common law, the relationship between crime and punishment was clear. As discussed in Apprendi, "[t]he substantive criminal law tended to be sanction-specific," meaning "it prescribed a particular sentence for each offense." Langbein, The English Criminal Trial Jury on the Eve of the French Revolution, in The Trial Jury in England, France, Germany 1700-1900, p. 36 (A. Schioppa ed. 1987) (quoted in Apprendi, supra, at 479, 120 S.Ct. 2348). The system left judges with little sentencing discretion: once the facts of the offense were determined by the jury, the "judge was meant simply to impose [the prescribed] sentence." Langbein, supra, at 36-37; see also 3 W. Blackstone, Commentaries on the Laws of England 396 (1768) (" THE judgment, though pronounced or awarded by the judges, is not their determination or sentence, but the determination and sentence of the law" (emphasis deleted)). This Court has recognized that the same was true, in many instances, early on in this country. United States v. Grayson, 438 U.S. 41, 45, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978) ; see, e.g., Commonwealth v. Smith, 1 Mass. 245 (1804) (describing state law that specified a punishment for larceny of damages three times the value of the stolen goods). While some early American statutes *109 provided ranges of permissible sentences, K. Stith & J. Cabranes, Fear of Judging: Sentencing Guidelines in the Federal Courts 9 (1998), the ranges themselves were linked to particular facts constituting the elements of the crime. E.g., Lacy v. State, 15 Wis. 13 (1862) (discussing arson statute that provided for a sentence of 7 to 14 years where the house was occupied at the time of the offense, but a sentence of 3 to 10 if it was *2159 not); Ga. Penal Code §§ 4324-4325 (1867) (robbery "by open force or violence" was punishable by 4 to 20 years' imprisonment, while " [r]obbery by intimidation, or without using force and violence," was punishable by 2 to 5 years' imprisonment). This linkage of facts with particular sentence ranges (defined by both the minimum and the maximum) reflects the intimate connection between crime and punishment.
Consistent with this connection between crime and punishment, various treatises defined "crime" as consisting of every fact which "is in law essential to the punishment sought to be inflicted," 1 J. Bishop, Criminal Procedure 50 (2d ed. 1872) (hereinafter Bishop), or the whole of the wrong "to which the law affixes ... punishment," id., § 80, at 51. See also 1 J. Bishop, New Criminal Procedure § 84, p. 49 (4th ed. 1895) (defining crime as "that wrongful aggregation [of elements] out of which the punishment proceeds"); Archbold 128 (defining crime to include any fact that "annexes a higher degree of punishment"). Numerous high courts agreed that this formulation "accurately captured the common-law understanding of what facts are elements of a crime." Apprendi, 530 U.S., at 511-512, 120 S.Ct. 2348 (THOMAS, J., concurring) (collecting cases). If a fact was by law essential to the penalty, it was an element of the offense.
2
From these widely recognized principles followed a well-established practice of including in the indictment, and submitting to the jury, every fact that was a basis for imposing *110 or increasing punishment. While an exhaustive history need not be recounted here, see id., at 501-509, 120 S.Ct. 2348 (THOMAS, J., concurring) (detailing practices of American courts from the 1840's onward), a few particularly salient examples illustrate the point. In Hope v. Commonwealth, 50 Mass. 134 (1845), the defendant was indicted for (and convicted of) larceny. The larceny statute established two levels of sentencing based on whether the value of the stolen property exceeded $100. Because punishment varied with value, the state high court found that value was an element of the offense:
"Our statutes, it will be remembered, prescribe the punishment for larceny, with reference to the value of the property stolen; and for this reason, as well as because it is in conformity with long established practice, the court are of [the] opinion that the value of the property alleged to be stolen must be set forth in the indictment." Id., at 137.
Numerous other contemporaneous court decisions reflect this same understanding. See, e.g., Ritchey v. State, 7 Blackf. 168, 169 (Ind.1844) (holding that indictment for arson must allege value of property destroyed, because statute set punishment based on value); United States v. Fisher, 25 F.Cas. 1086 (No. 15,102) (C.C.Ohio 1849) (McLean, J.) ("A carrier of the mail is subject to a higher penalty where he steals a letter out of the mail, which contains an article of value. And when this offense is committed, the indictment must allege the letter contained an article of value, which aggravates the offense and incurs a higher penalty").
A number of contemporaneous treatises similarly took the view that a fact that increased punishment must be charged in the indictment. As one 19th-century commentator explained:
"Where a statute annexes a higher degree of punishment to a common-law felony, if committed under particular circumstances, an indictment for the offence, in *111 order to bring the defendant within that higher degree of punishment, must expressly charge it to have been committed under those circumstances, and must state the circumstances *2160 with certainty and precision. [2 M. Hale, Pleas of the Crown *170]." Archbold 51 (15th ed. 1862).
Another explained that "the indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted." Bishop § 81, at 51. This rule "enabled [the defendant] to determine the species of offence" with which he was charged "in order that he may prepare his defence accordingly ... and that there may be no doubt as to the judgment which should be given, if the defendant be convicted." Archbold 44 (emphasis added). As the Court noted in Apprendi, "[t]he defendant's ability to predict with certainty the judgment from the face of the felony indictment flowed from the invariable linkage of punishment with crime." 530 U.S., at 478, 120 S.Ct. 2348.
B
Consistent with common-law and early American practice, Apprendi concluded that any "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" are elements of the crime. Id., at 490, 120 S.Ct. 2348 (internal quotation marks omitted); id., at 483, n. 10, 120 S.Ct. 2348 ("[F]acts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition 'elements' of a separate legal offense").[1] We held that the Sixth Amendment provides defendants with the right to have a jury find those facts beyond a reasonable doubt. Id., at 484, 120 S.Ct. 2348. While Harris limited Apprendi to facts increasing the statutory maximum, *112 the principle applied in Apprendi applies with equal force to facts increasing the mandatory minimum.
It is indisputable that a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed. Apprendi, supra, at 490, 120 S.Ct. 2348; Harris, 536 U.S., at 575, 582, 122 S.Ct. 2406 (THOMAS, J., dissenting). But for a finding of brandishing, the penalty is five years to life in prison; with a finding of brandishing, the penalty becomes seven years to life. Just as the maximum of life marks the outer boundary of the range, so seven years marks its floor. And because the legally prescribed range is the penalty affixed to the crime, infra, this page, it follows that a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense. Apprendi, supra, at 501, 120 S.Ct. 2348 (THOMAS, J., concurring); see also Bishop § 598, at 360-361 (if "a statute prescribes a particular punishment to be inflicted on those who commit it under special circumstances which it mentions, or with particular aggravations," then those special circumstances must be specified in the indictment (emphasis added)); 1 F. Wharton, Criminal Law § 371, p. 291 (rev. 7th ed. 1874) (similar).
It is impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime. See Harris, supra, at 569, 122 S.Ct. 2406 (BREYER, J., concurring in part and concurring in judgment) (facts increasing the minimum and facts increasing the maximum cannot be distinguished "in terms of logic"). Indeed, criminal statutes have long specified both the floor and ceiling of sentence ranges, which is evidence that both define the legally prescribed penalty. See, e.g., supra, at 2158 - 2159; N.Y. Penal Code §§ 231-232, *2161 p. 70 (1882) (punishment for first-degree robbery was 10 to 20 years' imprisonment; second-degree robbery was 5 to 15 years); Va.Code ch. 192, §§ 1-2, p. 787 (2d ed. 1860) (arson committed at night was punishable by 5 to 10 years; arson committed during the day was 3 to 10 years). This historical practice allowed those who violated the law to know, ex ante, the contours of the penalty that the legislature affixed *113 to the crime-and comports with the obvious truth that the floor of a mandatory range is as relevant to wrongdoers as the ceiling. A fact that increases a sentencing floor, thus, forms an essential ingredient of the offense.
Moreover, it is impossible to dispute that facts increasing the legally prescribed floor aggravate the punishment. Harris, supra, at 579, 122 S.Ct. 2406 (THOMAS, J., dissenting); O'Brien, 560 U.S., at ----, 130 S.Ct. 2169 (THOMAS, J., concurring in judgment). Elevating the low-end of a sentencing range heightens the loss of liberty associated with the crime: the defendant's "expected punishment has increased as a result of the narrowed range" and "the prosecution is empowered, by invoking the mandatory minimum, to require the judge to impose a higher punishment than he might wish." Apprendi, supra, at 522, 120 S.Ct. 2348 (THOMAS, J., concurring). Why else would Congress link an increased mandatory minimum to a particular aggravating fact other than to heighten the consequences for that behavior? See McMillan, 477 U.S., at 88, 89, 106 S.Ct. 2411 (twice noting that a mandatory minimum " 'ups the ante' " for a criminal defendant); Harris, supra, at 580, 122 S.Ct. 2406 (THOMAS, J., dissenting). This reality demonstrates that the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury.[2]
Defining facts that increase a mandatory statutory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the *114 face of the indictment. See Apprendi, 530 U.S., at 478-479, 120 S.Ct. 2348. It also preserves the historic role of the jury as an intermediary between the State and criminal defendants. See United States v. Gaudin, 515 U.S., at 510-511, 115 S.Ct. 2310 ("This right was designed 'to guard against a spirit of oppression and tyranny on the part of rulers,' and 'was from very early times insisted on by our ancestors in the parent country, as the great bulwark of their civil and political liberties' " (quoting 2 J. Story, Commentaries on the Constitution of the United States §§ 1779, 1780, pp. 540-541 (4th ed. 1873))); Williams v. Florida, 399 U.S. 78, 100, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) ("[T]he essential feature of a jury obviously lies in [its] interposition between the accused and his accuser"); Duncan v. Louisiana, 391 U.S. 145, 155, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) ("A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government").
In adopting a contrary conclusion, Harris relied on the fact that the 7-year minimum *2162 sentence could have been imposed with or without a judicial finding of brandishing, because the jury's finding already authorized a sentence of five years to life. 536 U.S., at 561, 122 S.Ct. 2406. The dissent repeats this argument today. See post, at 2166 (opinion of ROBERTS, C.J.) ("The jury's verdict authorized the judge to impose the precise sentence he imposed for the precise factual reason he imposed it"). While undoubtedly true, this fact is beside the point.[3]
As noted, the essential Sixth Amendment inquiry is whether a fact is an element of the crime. When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a *115 new offense and must be submitted to the jury. It is no answer to say that the defendant could have received the same sentence with or without that fact. It is obvious, for example, that a defendant could not be convicted and sentenced for assault, if the jury only finds the facts for larceny, even if the punishments prescribed for each crime are identical. One reason is that each crime has different elements and a defendant can be convicted only if the jury has found each element of the crime of conviction.
Similarly, because the fact of brandishing aggravates the legally prescribed range of allowable sentences, it constitutes an element of a separate, aggravated offense that must be found by the jury, regardless of what sentence the defendant might have received if a different range had been applicable. Indeed, if a judge were to find a fact that increased the statutory maximum sentence, such a finding would violate the Sixth Amendment, even if the defendant ultimately received a sentence falling within the original sentencing range (i.e., the range applicable without that aggravating fact). Cf. Hobbs v. State, 44 Tex. 353 (1875) (reversing conviction where the defendant was indicted for a crime punishable by 2 to 5 years and sentenced to 3 years because the trial court improperly instructed the jury to sentence the defendant between 2 to 10 years if it found a particular aggravating fact); State v. Callahan, 109 La. 946, 33 So. 931 (1903) (finding ex post facto violation where a newly enacted law increased the range of punishment, even though defendant was sentenced within the range established by the prior law).[4] The essential *116 point is that the aggravating fact produced a *2163 higher range, which, in turn, conclusively indicates that the fact is an element of a distinct and aggravated crime. It must, therefore, be submitted to the jury and found beyond a reasonable doubt.
Because there is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum, Harris was inconsistent with Apprendi . It is, accordingly, overruled.[5]
C
In holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment. See, e.g., Dillon v. United States, 560 U.S. ----, ----, 130 S.Ct. 2683, 2692, 177 L.Ed.2d 271 (2010) ("[W]ithin established limits[,] ... the exercise of [sentencing] discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts" (emphasis deleted and internal quotation marks omitted)); Apprendi, 530 U.S., at 481, 120 S.Ct. 2348 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion-taking into consideration various factors relating both to offense and offender-in imposing a judgment within the range prescribed by statute").[6] This *117 position has firm historical roots as well. As Bishop explained:
"[W]ithin the limits of any discretion as to the punishment which the law may have allowed, the judge, when he pronounces sentence, may suffer his discretion to be influenced by matter shown in aggravation or mitigation, not covered by the allegations of the indictment." Bishop § 85, at 54.
"[E]stablishing what punishment is available by law and setting a specific punishment within the bounds that the law has prescribed are two different things." Apprendi, supra, at 519, 120 S.Ct. 2348 (THOMAS, J., concurring). Our decision today is wholly consistent with the broad discretion of judges to select a sentence within the range authorized by law.
IV
Here, the sentencing range supported by the jury's verdict was five years' imprisonment to life. The District Court imposed the 7-year mandatory minimum sentence based on its finding by a preponderance of evidence that the firearm was "brandished." Because the finding of brandishing increased the penalty to which the defendant was subjected, it was an element, which had to be found by the jury beyond a reasonable doubt. The judge, rather than the jury, found brandishing, *2164 thus violating petitioner's Sixth Amendment rights.
Accordingly, we vacate the Fourth Circuit's judgment with respect to Alleyne's sentence on the § 924(c)(1)(A) conviction *118 and remand the case for resentencing consistent with the jury's verdict.
It is so ordered.
Justice SOTOMAYOR, with whom Justice GINSBURG and Justice KAGAN join, concurring.
I join the opinion of the Court, which persuasively explains why Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), and McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), were wrongly decided. Under the reasoning of our decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and the original meaning of the Sixth Amendment, facts that increase the statutory minimum sentence (no less than facts that increase the statutory maximum sentence) are elements of the offense that must be found by a jury and proved beyond a reasonable doubt. Ante, at 2156.
Of course, under our doctrine of stare decisis, establishing that a decision was wrong does not, without more, justify overruling it. While stare decisis is not an "inexorable command," Hohn v. United States, 524 U.S. 236, 251, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998) (internal quotation marks omitted), it is "a basic self-governing principle within the Judicial Branch, which is entrusted with the sensitive and difficult task of fashioning and preserving a jurisprudential system that is not based upon 'an arbitrary discretion,' " Patterson v. McLean Credit Union, 491 U.S. 164, 172, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (quoting The Federalist, No. 78, p. 490 (H. Lodge ed. 1888) (A. Hamilton)). We generally adhere to our prior decisions, even if we question their soundness, because doing so "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). To protect these important values, we require a " ' "special justification" ' " when departing from precedent. Dickerson v. United States, 530 U.S. 428, 443, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).
*119 A special justification is present here. As an initial matter, when procedural rules are at issue that do not govern primary conduct and do not implicate the reliance interests of private parties, the force of stare decisis is reduced. See United States v. Gaudin, 515 U.S. 506, 521, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) ; Payne, 501 U.S., at 828, 111 S.Ct. 2597. And any reliance interest that the Federal Government and state governments might have is particularly minimal here because prosecutors are perfectly able to "charge facts upon which a mandatory minimum sentence is based in the indictment and prove them to a jury." Harris, 536 U.S., at 581, 122 S.Ct. 2406 (THOMAS, J., dissenting). Indeed, even with Harris in place, prosecutors already sometimes charge such facts and seek to prove them to a jury. See Brief for National Association of Criminal Defense Lawyers et al. as Amici Curiae 26. That is precisely what happened here, where the verdict form allowed the jury to find whether petitioner had brandished a firearm yet the jury declined to make such a finding. Ante, at 2155 - 2156.
In this context, stare decisis does not compel adherence to a decision whose "underpinnings" have been "eroded" by subsequent developments of constitutional law. Gaudin, 515 U.S., at 521, 115 S.Ct. 2310. In rejecting a constitutional challenge to a *2165 state statute that increased a defendant's minimum sentence based on judicial factfinding, McMillan relied on a distinction between "elements" and "sentencing factors." 477 U.S., at 86, 106 S.Ct. 2411. That distinction was undermined by Apprendi, where we held that a legislature may not "remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." 530 U.S., at 490, 120 S.Ct. 2348 (internal quotation marks omitted).
In Harris, we squarely confronted the question whether "McMillan stands after Apprendi ." 536 U.S., at 550, 122 S.Ct. 2406. Five Members of the Court recognized that the cases were in fact incompatible. See id., at 569, 122 S.Ct. 2406 (BREYER, J., concurring in part and concurring in judgment); id., at 572, 583, 122 S.Ct. 2406 (THOMAS, J., dissenting) ("[O]nly a minority of the Court embrac[es]
*120 the distinction between McMillan and Apprendi that forms the basis of today's holding"). In the controlling opinion, Justice BREYER nevertheless declined to apply Apprendi to mandatory minimums because, though he found no way to distinguish sentencing floors from sentencing ceilings, he could not "yet accept" Apprendi itself. 536 U.S., at 569, 122 S.Ct. 2406; see also post, at 2166 (BREYER, J., concurring in part and concurring in judgment).
We have said that a decision may be "of questionable precedential value" when "a majority of the Court expressly disagreed with the rationale of [a] plurality." Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 66, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). And Harris has stood on especially weak ground because its vitality depended upon the possibility that the Court might retreat from Apprendi . See Harris, 536 U.S., at 569-570, 122 S.Ct. 2406 (opinion of BREYER, J.). That has not happened. Instead, while individual Members of this Court have continued to question Apprendi, see post, at 2166 (opinion of BREYER, J.); post, at 2172 - 2173 (ALITO, J., dissenting), its rule has become even more firmly rooted in the Court's Sixth Amendment jurisprudence in the decade since Harris . We have applied Apprendi to strike down mandatory sentencing systems at the state and federal levels. See Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007); United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) ; Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). And just last Term, we recognized that Apprendi 's reasoning extends to criminal fines. See Southern Union Co. v. United States, 567 U.S. ----, 132 S.Ct. 2344, 183 L.Ed.2d 318 (2012).
As a result of these decisions, Harris has become even more of an outlier. For that reason, I agree that it is appropriate for the Court to "overrule Harris and to apply Apprendi 's basic jury-determination rule to mandatory minimum sentences" in order to "erase th[is] anomaly" in our case law. Post, at 2167 (opinion of BREYER, J.). I do not suggest that every single factor that supports the overruling of precedent is present here. Post, at 2173 - 2174, n. * (ALITO, J., *121 dissenting). But particularly in a case where the reliance interests are so minimal, and the reliance interests of private parties are nonexistent, stare decisis cannot excuse a refusal to bring "coherence and consistency," Patterson, 491 U.S., at 174, 109 S.Ct. 2363, to our Sixth Amendment law.
If any doubt remained, our decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), should remove it. Ring considered an Apprendi challenge to Arizona's capital sentencing *2166 system. There, as here, the government urged us to adhere to a pre-Apprendi decision upholding that scheme. See Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). And there, as here, we resisted that plea. Ring, 536 U.S., at 609, 122 S.Ct. 2428. This case differs in only one respect: Our post-Apprendi consideration of the issue in Harris. But for the reasons given, Harris in no way strengthens the force of stare decisis in this case. With Apprendi now firmly rooted in our jurisprudence, the Court simply gives effect to what five Members of the Court recognized in Harris : "[ McMillan ] and Apprendi are irreconcilable; our Sixth Amendment jurisprudence cannot be home to both." 536 U.S., at 609, 122 S.Ct. 2428.
Justice ALITO is therefore mistaken when he suggests that the Court overrules Harris because "there are currently five Justices willing to vote to" do so. Post, at 2173 - 2174, n. *. No doubt, it would be illegitimate to overrule a precedent simply because the Court's current membership disagrees with it. But that is not a plausible account of the decision today. The Court overrules McMillan and Harris because the reasoning of those decisions has been thoroughly undermined by intervening decisions and because no significant reliance interests are at stake that might justify adhering to their result. Likewise, Justice ALITO exaggerates when he suggests that this case creates an important "precedent about precedent." Post, at 2166 - 2167. Rarely will a claim for stare decisis be as weak as it is here, where a constitutional rule of criminal procedure is at issue that a majority of the Court has previously recognized is incompatible with our broader *122 jurisprudence. And finally, Justice ALITO's contention that Apprendi and Harris stand on equal footing for stare decisis purposes, post, at 2172 - 2173, 2173 - 2174, n. *, is simply inconsistent with our last decade of Sixth Amendment jurisprudence.
Because I believe that the Court's decision to apply Apprendi to mandatory minimums is consistent with stare decisis principles, I join the opinion of the Court.
Justice BREYER, concurring in part and concurring in the judgment.
Eleven years ago, in Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), I wrote that "I cannot easily distinguish Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), from this case in terms of logic." Id. , at 569, 122 S.Ct. 2406 (opinion concurring in part and concurring in judgment). I nonetheless accepted Harris ' holding because I could "[n]ot yet accept [ Apprendi 's ] rule." 536 U.S., at 569, 122 S.Ct. 2406. I continue to disagree with Apprendi . See 536 U.S., at 569-570, 122 S.Ct. 2406 ; United States v. Booker, 543 U.S. 220, 326, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (opinion dissenting in part); Blakely v. Washington, 542 U.S. 296, 328, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (dissenting opinion); Apprendi, supra, at 555, 120 S.Ct. 2348 (same). But Apprendi has now defined the relevant legal regime for an additional decade. And, in my view, the law should no longer tolerate the anomaly that the Apprendi / Harris distinction creates.
The Court's basic error in Apprendi, I believe, was its failure to recognize the law's traditional distinction between elements of a crime (facts constituting the crime, typically for the jury to determine) and sentencing facts (facts affecting the sentence, often concerning, e.g., the manner in which the offender committed the crime, and typically for the judge to determine). The early historical references that this Court's opinions have set forth in favor of Apprendi refer to offense elements, *2167 not to sentencing facts . Thus, when Justice Story wrote that the Sixth Amendment's guarantee of trial by jury offered " 'securit[y] against the prejudices of judges,' " post, at 2169 (ROBERTS, C.J., dissenting) (quoting *123 Commentaries on the Constitution of the United States § 924, p. 657 (Abr. 1833)), he was likely referring to elements of a crime; and the best answer to Justice SCALIA's implicit question in Apprendi -what, exactly, does the "right to trial by jury" guarantee?-is that it guarantees a jury's determination of facts that constitute the elements of a crime. 530 U.S., at 498-499, 120 S.Ct. 2348 (concurring opinion).
Although I have set forth these minority views before, see Booker, supra, at 326, 125 S.Ct. 738 (opinion dissenting in part); Blakely, supra, at 328, 124 S.Ct. 2531 (dissenting opinion); Apprendi, supra, at 555, 120 S.Ct. 2348 (same), I repeat this point now to make clear why I cannot accept the dissent's characterization of the Sixth Amendment as simply seeking to prevent "judicial overreaching" when sentencing facts are at issue, post, at 2169. At the very least, the Amendment seeks to protect defendants against "the wishes and opinions of the government" as well. Ibid. (quoting Story, supra, § 924, at 657 ). And, that being so, it seems to me highly anomalous to read Apprendi as insisting that juries find sentencing facts that permit a judge to impose a higher sentence while not insisting that juries find sentencing facts that require a judge to impose a higher sentence. See Harris,supra, at 569-570, 122 S.Ct. 2406 (opinion of BREYER, J.).
To overrule Harris and to apply Apprendi 's basic jury-determination rule to mandatory minimum sentences would erase that anomaly. Where a maximum sentence is at issue, Apprendi means that a judge who wishes to impose a higher sentence cannot do so unless a jury finds the requisite statutory factual predicate. Where a mandatory minimum sentence is at issue, application of Apprendi would mean that the government cannot force a judge who does not wish to impose a higher sentence to do so unless a jury finds the requisite statutory factual predicate. In both instances the matter concerns higher sentences; in both instances factfinding must trigger the increase; in both instances jury-based factfinding would act as a check: in the first instance, against *124 a sentencing judge wrongly imposing the higher sentence that the judge believes is appropriate, and in the second instance, against a sentencing judge wrongly being required to impose the higher sentence that the judge believes is inappropriate.
While Harris has been the law for 11 years, Apprendi has been the law for even longer; and I think the time has come to end this anomaly in Apprendi 's application. Consequently, I vote to overrule Harris . I join Parts I, III-B, III-C, and IV of the Court's opinion and concur in its judgment.
Chief Justice ROBERTS, with whom Justice SCALIA and Justice KENNEDY join, dissenting.
Suppose a jury convicts a defendant of a crime carrying a sentence of five to ten years. And suppose the judge says he would sentence the defendant to five years, but because he finds that the defendant used a gun during the crime, he is going to add two years and sentence him to seven. No one thinks that this violates the defendant's right to a jury trial in any way.
Now suppose the legislature says that two years should be added to the five year minimum, if the judge finds that the defendant used a gun during the crime. Such a provision affects the role of the judge- *2168 limiting his discretion-but has no effect on the role of the jury. And because it does not affect the jury's role, it does not violate the jury trial guarantee of the Sixth Amendment.
The Framers envisioned the Sixth Amendment as a protection for defendants from the power of the Government. The Court transforms it into a protection for judges from the power of the legislature. For that reason, I respectfully dissent.
I
In a steady stream of cases decided over the last 15 years, this Court has sought to identify the historical understanding *125 of the Sixth Amendment jury trial right and determine how that understanding applies to modern sentencing practice. Our key sources in this task have been 19th-century treatises and common law cases identifying which facts qualified as "elements" of a crime, and therefore had to be alleged in the indictment and proved to a jury beyond a reasonable doubt. See, e.g., Apprendi v. New Jersey, 530 U.S. 466, 476-483, 489-490, n. 15, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (collecting sources); id., at 501-518, 120 S.Ct. 2348 (THOMAS, J., concurring) (same). With remarkable uniformity, those authorities provided that an element was "whatever is in law essential to the punishment sought to be inflicted." 1 J. Bishop, Criminal Procedure 50 (2d ed. 1872); see also Apprendi, supra, at 489, n. 15, 120 S.Ct. 2348 (" '[T]he indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted' " (quoting United States v. Reese, 92 U.S. 214, 232, 23 L.Ed. 563 (1876) (Clifford, J., dissenting))); 1 Bishop, supra, § 87, at 55 (an indictment must include "any particular fact which the law makes essential to the punishment").
Judging that this common law rule best reflects what the Framers understood the Sixth Amendment jury right to protect, we have struck down sentencing schemes that were inconsistent with the rule. In Apprendi, for example, the defendant pleaded guilty to a crime that carried a maximum sentence of ten years. After his plea, however, the trial judge determined that the defendant had committed the crime with a biased purpose. Under a New Jersey law, that finding allowed the judge to impose up to ten additional years in prison. Exercising that authority, the judge sentenced the defendant to 12 years. 530 U.S., at 469-471, 120 S.Ct. 2348.
Because the sentence was two years longer than would have been possible without the finding of bias, that finding was "essential to the punishment" imposed. 1 Bishop, supra, at 50; see Apprendi, 530 U.S., at 491-492, 120 S.Ct. 2348. Thus, in line with the common law rule, we held the New Jersey procedure unconstitutional. Id., at 497, 120 S.Ct. 2348.
*126 Subsequent cases have worked out how this principle applies in other contexts, such as capital sentencing regimes, state and federal sentencing guidelines, or criminal fines. See Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) ; Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) ; United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) ; Southern Union Co. v. United States, 567 U.S. ----, 132 S.Ct. 2344, 183 L.Ed.2d 318 (2012). Through all of them, we have adhered to the rule, rooted in the common law understanding described above, that we laid down in Apprendi : "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S., at 490, 120 S.Ct. 2348; see Blakely, supra , at 301, 124 S.Ct. 2531 (quoting above statement);
*2169 Booker, supra, at 231, 125 S.Ct. 738 (same); Southern Union Co., supra, at ----, 132 S.Ct., at 2349-2350 (same); see also Ring,supra, at 588-589, 122 S.Ct. 2428 (Sixth Amendment "does not permit a defendant to be 'expose[d] ... to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone' " (quoting Apprendi, supra, at 483, 120 S.Ct. 2348; alterations in original)).
We have embraced this 19th-century common law rule based not only on a judgment that it reflects the understanding in place when the Sixth Amendment was ratified, but also on the "need to give intelligible content to the right of jury trial." Blakely, supra , at 305, 124 S.Ct. 2531 As Justice SCALIA wrote in Apprendi, it is unclear "what the right to trial by jury does guarantee if ... it does not guarantee ... the right to have a jury determine those facts that determine the maximum sentence the law allows." 530 U.S., at 498-499, 120 S.Ct. 2348 (concurring opinion).
After all, if a judge's factfinding could authorize a sentence beyond that allowed by the jury's verdict alone, the jury trial would be "a mere preliminary to a judicial inquisition into the facts of the crime the State actually seeks to punish." Blakely, supra , at 306-307, 124 S.Ct. 2531 The Framers clearly envisioned *127 a more robust role for the jury. They appreciated the danger inherent in allowing "justices ... named by the crown" to "imprison, dispatch, or exile any man that was obnoxious to the government, by an instant declaration, that such is their will and pleasure." 4 W. Blackstone, Commentaries on the Laws of England 343 (1769). To guard against this "violence and partiality of judges appointed by the crown," the common law "wisely placed th[e] strong ... barrier, of ... trial by jury, between the liberties of the people, and the prerogative of the crown." Ibid. The Sixth Amendment therefore provided for trial by jury as a "double security, against the prejudices of judges, who may partake of the wishes and opinions of the government, and against the passions of the multitude, who may demand their victim with a clamorous precipitancy." J. Story, Commentaries on the Constitution of the United States § 924, p. 657 (Abr. 1833); see also The Federalist No. 83, p. 499 (C. Rossiter ed. 1961) (A. Hamilton) (discussing criminal jury trial as a protection against "judicial despotism"). Our holdings that a judge may not sentence a defendant to more than the jury has authorized properly preserve the jury right as a guard against judicial overreaching.
II
There is no such risk of judicial overreaching here. Under 18 U.S.C. § 924(c)(1)(A)(i), the jury's verdict fully authorized the judge to impose a sentence of anywhere from five years to life in prison. No additional finding of fact was "essential" to any punishment within the range. After rendering the verdict, the jury's role was completed, it was discharged, and the judge began the process of determining where within that range to set Alleyne's sentence.
Everyone agrees that in making that determination, the judge was free to consider any relevant facts about the offense and offender, including facts not found by the jury beyond a reasonable doubt.
*128 "[B]oth before and since the American colonies became a nation, courts ... practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law."
*2170 Williams v. New York, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).
As Apprendi itself recognized, "nothing in this history suggests that it is impermissible for judges to exercise discretion-taking into consideration various factors relating both to offense and offender-in imposing a judgment within the range prescribed by statute." 530 U.S., at 481, 120 S.Ct. 2348 (emphasis deleted); see also Dillon v. United States, 560 U.S. ----, ----, 130 S.Ct. 2683, 2692-2693, 177 L.Ed.2d 271 (2010). And the majority does not dispute the point. Ante, at 2163 ("Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury."). Thus, under the majority's rule, in the absence of a statutory mandatory minimum, there would have been no constitutional problem had the judge, exercising the discretion given him by the jury's verdict, decided that seven years in prison was the appropriate penalty for the crime because of his finding that the firearm had been brandished during the offense.
In my view, that is enough to resolve this case. The jury's verdict authorized the judge to impose the precise sentence he imposed for the precise factual reason he imposed it. As we have recognized twice before, the Sixth Amendment demands nothing more. See Harris v. United States, 536 U.S. 545, 568-569, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) ; McMillan v. Pennsylvania, 477 U.S. 79, 93, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).
III
This approach is entirely consistent with Apprendi . As I have explained, Apprendi 's constraint on the normal legislative control of criminal procedure draws its legitimacy from two primary principles: (1) common law understandings of *129 the "elements" of a crime, and (2) the need to preserve the jury as a "strong barrier" between defendants and the State. Neither of those principles supports the rule the majority adopts today.
First, there is no body of historical evidence supporting today's new rule. The majority does not identify a single case holding that a fact affecting only the sentencing floor qualified as an element or had to be found by a jury, nor does it point to any treatise language to that effect. Ante, at 2158 - 2160. To be sure, the relatively recent vintage of mandatory minimum sentencing enhancements means that few, if any, 19th-century courts would have encountered such a fact pattern. So I do not mean to suggest that the absence of historical condemnation of the practice conclusively establishes its constitutionality today. But given that Apprendi 's rule rests heavily on affirmative historical evidence about the practices to which we have previously applied it, the lack of such evidence on statutory minimums is a good reason not to extend it here.
Nor does the majority's extension of Apprendi do anything to preserve the role of the jury as a safeguard between the defendant and the State. That is because even if a jury does not find that the firearm was brandished, a judge can do so and impose a harsher sentence because of his finding, so long as that sentence remains under the statutory maximum. The question here is about the power of judges, not juries. Under the rule in place until today, a legislature could tell judges that certain facts carried certain weight, and require the judge to devise a sentence based on that weight-so long as the sentence remained within the range authorized by the jury. Now, in the name of the jury right that formed a barrier between the defendant and the State, the majority has erected a barrier between judges and legislatures, establishing that discretionary sentencing *2171 is the domain of judges. Legislatures must keep their respectful distance. *130 I find this new rule impossible to square with the historical understanding of the jury right as a defense from judges, not a defense of judges. See Apprendi, supra, at 498, 120 S.Ct. 2348 (SCALIA, J., concurring) ("Judges, it is sometimes necessary to remind ourselves, are part of the State"). Just as the Sixth Amendment "limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury," Blakely, 542 U.S., at 308, 124 S.Ct. 2531, so too it limits legislative power only to the extent that power infringes on the province of the jury. Because the claimed infringement here is on the province of the judge, not the jury, the jury right has no work to do.
IV
The majority offers several arguments to the contrary. I do not find them persuasive.
First, the majority asserts that "because the legally prescribed range is the penalty affixed to the crime, it follows that a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense." Ante, at 2160 - 2161 (citation omitted). The syllogism trips out of the gate, for its first premise-that the constitutionally relevant "penalty" includes the bottom end of the statutory range-simply assumes the answer to the question presented. Neither of the historical sources to which the majority points gives an answer: The Bishop treatise speaks only to situations in which "a statute prescribes a particular punishment," not a range of possible punishments. 1 Bishop, Criminal Procedure § 598, at 360-361. The Wharton treatise is similarly unhelpful, focusing on statutes that change the maximum or alter the nature of the common law crime. See 1 F. Wharton, Criminal Law § 371, p. 291 (rev. 7th ed. 1874). The sources provided in the Apprendi concurrence offer no support, for as already discussed, we lack historical evidence about the treatment of facts that altered only the floor of a sentencing range.
*131 Second, the majority observes that "criminal statutes have long specified both the floor and ceiling of sentence ranges, which is evidence that both define the legally prescribed penalty." Ante, at 2160 - 2161. Again, though, this simply assumes the core premise: That the constitutionally relevant "penalty" involves both the statutory minimum and the maximum. Unless one accepts that premise on faith, the fact that statutes have long specified both floor and ceiling is evidence of nothing more than that statutes have long specified both the floor and the ceiling. Nor does it help to say that "the floor of a mandatory range is as relevant to wrongdoers as the ceiling." Ante, at 2161. The meaning of the Sixth Amendment does not turn on what wrongdoers care about most.
More importantly, legal rules frequently focus on the maximum sentence while ignoring the minimum, even though both are "relevant" to punishment. Closest to this case, the question whether the jury right applies at all turns on whether the maximum sentence exceeds six months-not, say, whether the minimum punishment involves time in prison. Blanton v. North Las Vegas, 489 U.S. 538, 543, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989) ; see also Lewis v. United States, 518 U.S. 322, 326, 116 S.Ct. 2163, 135 L.Ed.2d 590 (1996) ("In evaluating the seriousness of the offense, we place primary emphasis on the maximum prison term authorized"). Likewise, the rights to vote and to bear arms are typically denied to felons-that is, those convicted of a crime with a maximum sentence of more than one year in prison. See *2172 Richardson v. Ramirez, 418 U.S. 24, 48, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974) ; District of Columbia v. Heller, 554 U.S. 570, 626, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) ; Black's Law Dictionary 694 (9th ed. 2009). Examples of other distinctions turning only on maximum penalties abound, as in cases of recidivism enhancements that apply only to prior convictions with a maximum sentence of more than a specified number of years. See, e.g., 18 U.S.C. § 924(e)(2). That a minimum sentence is "relevant" to punishment, and that a statute defines it, does not mean it must be treated the same as the maximum sentence the law allows. *132 Third, the majority offers that "it is impossible to dispute that facts increasing the legally prescribed floor aggravate the punishment." Ante, at 2161. This argument proves too much, for it would apply with equal force to any fact which leads the judge, in the exercise of his own discretion, to choose a penalty higher than he otherwise would have chosen. The majority nowhere explains what it is about the jury right that bars a determination by Congress that brandishing (or any other fact) makes an offense worth two extra years, but not an identical determination by a judge. Simply calling one "aggravation" and the other "discretion" does not do the trick.
Fourth, the majority argues that "[i]t is no answer to say that the defendant could have received the same sentence with or without" a particular factual finding, pointing out "that a defendant could not be convicted and sentenced for assault, if the jury only finds the facts for larceny, even if the punishments prescribed for each crime are identical." Ante, at 2162. In that hypothetical case, the legislature has chosen to define two crimes with two different sets of elements. Courts must, of course, respect that legislative judgment. But that tells us nothing about when courts can override the legislature's decision not to create separate crimes, and instead to treat a particular fact as a trigger for a minimum sentence within the already-authorized range.
* * *
I will not quibble with the majority's application of our stare decisis precedents. But because I believe the majority's new rule-safeguarding the power of judges, not juries-finds no support in the history or purpose of the Sixth Amendment, I respectfully dissent.

In Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), we recognized a narrow exception to this general rule for the fact of a prior conviction. Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today.

Juries must find any facts that increase either the statutory maximum or minimum because the Sixth Amendment applies where a finding of fact both alters the legally prescribed range and does so in a way that aggravates the penalty. Importantly, this is distinct from factfinding used to guide judicial discretion in selecting a punishment "within limits fixed by law." Williams v. New York, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). While such findings of fact may lead judges to select sentences that are more severe than the ones they would have selected without those facts, the Sixth Amendment does not govern that element of sentencing. Infra, at 2162 - 2164, and n. 6.

Apprendi rejected an argument similar to the one advanced in Harris . In Apprendi, the State of New Jersey argued that increasing the defendant's statutory maximum on the challenged count did not violate the Sixth Amendment because "the judge could have imposed consecutive sentences," in conjunction with other counts, to produce the sentence that the defendant actually received on the count at issue. 530 U.S., at 474, 120 S.Ct. 2348. We found that this possibility did not preclude a Sixth Amendment violation. Ibid.

Many criminal statutes allow for this possibility. For example, an Illinois law provides for a sentence of 2 to 10 years' imprisonment for intimidation, Ill. Comp. Stat., ch. 720, § 5/12-6(b) (West 2010), and 3 to 14 years for aggravated intimidation, § 5/12-6.2(b). The elements of aggravated intimidation include all the elements of intimidation plus one enumerated aggravating fact. Under this statute, if a jury found each element of intimidation, but the judge purported to find a fact that elevated the offense to aggravated intimidation, the Sixth Amendment would most certainly be violated, even if the defendant received a sentence that fell within both ranges. See also La.Rev.Stat. Ann. §§ 14:51, 14:52 (West 2007) (sentencing range for simple arson is 2 to 15 years; sentencing range for aggravated arson is 6 to 20 years); Mont.Code Ann. §§ 45-5-302(2), 5-303(2) (2011) (sentencing range for kidnapping is 2 to 10 years, but 2 to life for aggravated kidnapping).

The force of stare decisis is at its nadir in cases concerning procedural rules that implicate fundamental constitutional protections. Because Harris is irreconcilable with the reasoning of Apprendi and the original meaning of the Sixth Amendment, we follow the latter.

See also United States v. Tucker, 404 U.S. 443, 446, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (judges may exercise sentencing discretion through "an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come"); Williams v. New York, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) ("[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law").