**Dissenting Opinion from Denial of En Banc Reconsideration filed April 2, 2020.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00498-CR
## NO. 14-15-00499-CR

### SCOTT NILES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from County Criminal Court at Law No. 14**
**Harris County, Texas**
**Trial Court Cause No. 2018917 & 2018918**

## DISSENTING OPINION FROM DENIAL OF EN BANC RECONSIDERATION

I respectfully dissent from the Court's denial of en banc reconsideration. The panel opinion misconstrues the Court of Criminal Appeals' opinion remanding the case and analyzes harm through the wrong framework.

Niles was charged by information with two counts of Class A misdemeanor terroristic threat to a public servant. But the jury charges set forth the elements for Class B misdemeanor terroristic threat and wholly failed to include any language

about whether the complainant was a public servant. The State also failed to discuss the "public servant" element during closing arguments. Based on the jury charge given, the jury found Niles guilty of two counts of the Class B terroristic threat offense. The judgment, however, reflected convictions for Class A offenses, and the judge sentenced Niles to the maximum allowable sentence for a Class A misdemeanor, which is double the maximum allowable sentence for a Class B misdemeanor for which the jury found him guilty.

On direct appeal, the State conceded that the sentence was illegal. This court reformed the judgment to reflect a Class B conviction and reversed and remanded for a new punishment consistent with the jury's verdict. *Niles v. State*, No. 14-15-00498-CR, 2016 WL 7108248, at *11 (Tex. App.—Houston [14th Dist.] Dec. 6, 2016) (mem. op., not designated for publication) ("*Niles I*"), *rev'd*, 555 S.W.3d 562 (Tex. Crim. App. 2018). The State Prosecuting Attorney independently petitioned the Court of Criminal Appeals, arguing for the first time that Niles's illegal sentence claims should be reviewed for harmless error. The high court ultimately granted review on its own motion to decide whether we had erred in reforming the judgments to Class B misdemeanors. Finding that Niles's Sixth Amendment right to a jury trial was violated, the court remanded the case to this court to conduct a harm analysis consistent with its opinion. *Niles v. State*, 555 S.W.3d 562, 573 (Tex. Crim. App. 2018).

In this court's opinion on remand, the panel incorrectly states that "[the Court of Criminal Appeals] reversed and remanded with instructions for this court to conduct a harm analysis under the legal standard articulated in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)." *Niles v. State*, No. 14-15-00498-CR, 2019 WL 3121781, at *1 (Tex. App.—Houston [14th Dist.] July 16, 2019, no pet. h.) (op. on remand). In actuality, *Almanza* is cited in the high court's opinion exactly once – in a footnote to the dissent noting that "*Almanza* construed Article 36.19 of

the Code of Criminal Procedure, which speaks to claims of jury charge error when raised by the defendant, not by the State." *Niles*, 555 S.W.3d at 576 n.10 (Yeary, J., dissenting). Instead, the court's majority opinion discusses *Neder*, *Apprendi*, and its progeny and remanded the case with instructions for this court to conduct a harm analysis consistent with its opinion. *Id*. at 573.

In examining the rationale and the caselaw surrounding *Almanza*, it is evident that *Almanza* should not apply in this situation. *Almanza*'s analysis is based on Article 36.19 of the Texas Code of Criminal Procedure, and its harm analysis exists to analyze those times when the *defendant's* rights were harmed by the jury charge. By contrast, the missing "public servant" element here is the State's issue, as it was the State's burden to prove that element beyond a reasonable doubt. *See Williams v. State*, 273 S.W.3d 200, 222 (Tex. Crim. App. 2008). Because it was the State's issue, it logically follows that the State had the burden to ensure that the jury charge correctly reflected the conviction that the State was seeking. Thus, the defendant had no duty to object and reasonably could have believed the State had abandoned that aggravating element of the offense, as the State can do at any point. In fact, the State abandoned this element twice – first by not objecting to the jury charge at trial and second by conceding this point on its initial appearance in front of this court.

This court's holding creates an unsustainable absurdity. If defense counsel had objected to the omission of the "public servant" element in the jury charge, requesting that his client face a higher offense level than the one the State had agreed to, we would likely be faced with a potentially sustainable ineffective assistance of counsel claim. What possible strategic reason would an attorney have for urging a charge with a higher punishment range than the one that the State desires?

I firmly believe that *Niles I*, which remanded the case for a new punishment hearing for the Class B offenses, was correct. First, the State abandoned the "public servant" element by not objecting to the jury charge, failing to mention it in closing

3

arguments, and conceding error on appeal. Second, in his dissent to *Neder*, Justice Scalia highlights the inherent tension in remanding this case for a harm analysis.

> The Court's decision today is the only instance I know of (or could conceive of) in which the remedy for a constitutional violation by a trial judge (making the determination of criminal guilt reserved to the jury) is a repetition of the same constitutional violation by the appellate court (making the determination of criminal guilt reserved to the jury).

*Neder v. United States*, 527 U.S. 1, 32 (1999) (Scalia, J., dissenting). In performing a harm analysis, we are impermissibly usurping the role of the jury, becoming the factfinders, and substituting our judgment for what we believe the jury would have done if they had been given a different jury charge.

Still, because the Court of Criminal Appeals directed us to perform a harm analysis, I turn to the problem we face: determining the harm analysis we should apply to examine this issue. On remand, the panel picks *Almanza*, although neither the Court of Criminal Appeals nor common sense would direct it to do so. The conundrum lies in the years of *Apprendi* type cases that provide an ever changing spectrum of guidance on how to analyze cases in which the jury charge is missing an element that is also an aggravating factor which affects the allowable punishment range. The *Apprendi* line of cases creates some confusion concerning how to analyze this particular harm. Much of the confusion lies in the shifting focus of the Supreme Court's determination of "harmless error" and its disposition of cases in which the jury does not make a finding on an element or a sentencing factor.

In *Neder v. United States*, the United States Supreme Court held that the failure to submit an element of the offense to the jury was not structural error and was thus subject to a constitutional harmless error review. *Id*. at 8. Neder was charged with mail fraud, wire fraud, and bank fraud. *Id*. at 6. At trial, the court failed to include materiality, which is an element of all three crimes, as an element of the offense in its jury instructions. *Id*. at 4-6. The Supreme Court held that this omission was error and subject to a *Chapman* harmless-error analysis – in short, the Court

4

decided that the constitutional error of omitting an element from the jury charge is harmless when it appears beyond a reasonable doubt that the error did not contribute to the verdict. *Id.* at 4 (citing *Chapman v. California*, 386 U.S. 18, 24 (1966)).

A year after *Neder*, the Supreme Court decided *Apprendi* and held that any fact that increases the penalty beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Apprendi pleaded guilty to three separate offenses – two second-degree offenses, with a punishment range of five to ten years, and a third-degree offense, with a punishment range of three to five years. *Id.* at 469-70. A separate statute provided for a second-degree offense to be enhanced to a punishment range of ten to twenty years if the trial judge finds, by a preponderance of the evidence, that the defendant committed a hate crime. *Id.* at 468-69. In discussing the difficulty of determining the differences between a sentencing factor and an element, the court makes clear that "the relevant inquiry is one not of form, but of effect – does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* at 494. The Court differentiated between a "sentencing factor," describing a circumstance that supports a specific sentence within the range authorized by the jury's verdict, and a "sentence enhancement," describing an increase beyond the maximum authorized statutory sentence that thus "fits squarely within the usual definition of an 'element' of the offense." *Id.* at 494 n.19. The jury found that the State proved the elements of a second-degree offense beyond a reasonable doubt; the jury did not, however, make any finding on the "hate crime" element because it was not presented with that element. *Id.* at 495. *Apprendi* was reversed and remanded with no discussion of harmless error.

In *Washington v. Recuenco*, the Supreme Court held that the failure to submit a sentencing factor to the jury was subject to harmless-error analysis under *Neder*. *Washington v. Recuenco*, 548 U.S. 212, 221-22 (2006). Recuenco was found guilty

by a jury of second-degree assault with a deadly weapon. *Id.* at 215. The verdict form asked the jury to make a deadly weapon finding but did not ask the jury to find that Recuenco had used a firearm. *Id.* Regardless, the trial court applied the three-year firearm enhancement to his sentence, rather than the one-year deadly weapon enhancement. *Id.* *Recuenco* effectively merged the *Apprendi* and *Neder* lines of cases, finding that a violation of Recuenco's constitutional right to a jury determination on each element is not structural error and thus is subject to a harmless error analysis.

Further muddying the waters, *Alleyne v. United States* seemed to echo back to *Apprendi*'s holding, and the Court, without discussing harmless error, vacated Alleyne's sentence and remanded his case for resentencing consistent with the jury's verdict. 570 U.S. 99, 117-18 (2013). Alleyne had been charged with using or carrying a firearm in relation to a violent crime which carried a five-year mandatory minimum sentence, increased to a seven-year minimum if the firearm was brandished, and a ten-year minimum if the firearm was discharged. *Id.* at 104. The jury convicted Alleyne but did not find that he had brandished or discharged the firearm. *Id.* The judge found that Alleyne had brandished the weapon and sentenced him to seven years' imprisonment. *Id.* The Court did not discuss *Neder* or harmless error. In fact, it declared that "[w]hen a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." *Id.* at 114-15.

Recently, the Supreme Court reiterated the rationale from the *Apprendi* and *Alleyne* line of cases in *United States v. Haymond*, stating succinctly that "[a] judge's authority to issue a sentence derives from, and is limited by, the jury's factual findings of criminal conduct." 139 S. Ct. 2369, 2376 (2019).

The conflict lies in the two intertwined but starkly different treatments of cases in which the jury does not make a finding on an aggravating element of an offense

beyond a reasonable doubt. One strain leads us to harmless error analysis; the other leads us to remand for a punishment resentencing according to the jury's verdict. That said, the Court of Criminal Appeals' opinion directs us to perform a harm analysis. Although it seems in conflict with *Alleyne*, the Court of Criminal Appeals in *Niles* relies on *Neder* and *Recuenco* to suggest that a harmless error type analysis is appropriate. Guiding our focus, *Niles* gives us this framework:

> [T]he courts asked whether the element not included in the instructions was inherent in the elements that the jury did find. If the missing element was logically encompassed by the guilty verdict and was not in fact contested, the error was considered harmless. *See*, *e.g.*, *United States v. Stanford*, 823 F.3d 814, 832 (5th Cir. 2016), *cert. denied*, —— U.S. ——, 137 S. Ct. 453, 196 L.Ed.2d 330 (2016) (discussing *Neder*).

*Niles*, 555 S.W.3d at 572.

In following the Court of Criminal Appeals' directive, we should then look at the elements that were actually presented to the jury and whether the missing element was incorporated. Here, the public servant element was not inherently encompassed by the terroristic threat elements.

Because the panel opinion does not apply the correct framework to analyze harm, I respectfully dissent from the denial of en banc reconsideration. Under the correct framework, I would find the omission of the public servant element to be harmful and remand this case to the trial court.

/s/    Frances Bourliot
Justice

En Banc Panel consists of Chief Justice Frost and Justices Christopher, Wise, Jewell, Bourliot, Zimmerer, Spain, Hassan, and Poissant. (Bourliot, J., dissenting, joined by Zimmerer, J., Spain, J., Hassan, J.; Spain, J., dissenting).

Publish—Tex. R. App. P. 47.2(b).