# United States Court of Appeals
## For the First Circuit

No. 12-2289

UNITED STATES OF AMERICA,

Appellee,

v.

MAXIMO LARYI HERRERRA PENA,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]


Before

Lynch, Chief Judge,
Stahl and Kayatta, Circuit Judges.


Robert L. Sheketoff for appellant.
Jennifer Hay Zacks, Assistant U.S. Attorney, with whom Carmen
M. Ortiz, United States Attorney, was on brief, for appellee.


February 5, 2014

**LYNCH, Chief Judge**.  In federal prosecutions, under the requirements of Alleyne v. United States, 133 S. Ct. 2151, 2158 (2013), if the distribution of drugs is proven beyond a reasonable doubt to a jury to have resulted in a death, a defendant will face a 20-year mandatory minimum sentence.  See 21 U.S.C. § 841(b).  But if the government does not meet that burden before conviction, a defendant will face a different mandatory minimum -- either 10 years, 5 years, or no minimum, depending on the drug type and quantity.  See 21 U.S.C. § 841(b)(1)(A), (B), (C).  When, as here, there is Alleyne error resulting in the imposition of a mandatory minimum sentence based on judicial findings on a lesser standard of proof, the circuit courts usually have merely remanded for resentencing by the district courts.

The prosecution here asks us to depart from that usual practice.  We are asked, after an Alleyne error and following a conviction based on a straight guilty plea to drug dealing but not to "death resulting," to permit the prosecution on remand to empanel a sentencing jury to allow the government to now prove beyond a reasonable doubt that a death resulted from the defendant's drug dealing.  Because Alleyne was decided after sentencing and while the case was on appeal, the situation in this case will not frequently occur.  We hold that the government's proposed course of action is foreclosed on the facts of this case,

-2-

is unfair, and would raise troubling constitutional questions that can be avoided by denying the government's request.

I.

Defendant Maximo Laryi Herrerra Pena was a co-leader, along with Joel Liceaga, of a heroin trafficking ring that operated in Boston and the South Shore of Massachusetts. In 2009-2010, Pena was directly linked to drug transactions involving a total of more than 1.6 kilograms of heroin.

On July 30, 2009, Pena's organization sold heroin to Joshua Johnson and David Geoffrion, leaders of a heroin distribution business on Cape Cod. Later that day, Johnson and Geoffrion sold a bag of heroin to Chelsea Joslin, a 20-year-old, for $50. The government argues that the bag of heroin Geoffrion sold to Joslin came from the heroin bought from Pena's organization. The next day, Joslin was found dead in her Cape Cod home, with a needle, a syringe, and a plastic baggie with heroin residue nearby. Joslin had also been drinking and was taking a prescription drug, and autopsy results showed the presence of all three substances in her blood.

Pena was indicted on December 23, 2010, along with Liceaga, Geoffrion, and Victor Manon, a drug runner from Pena and Liceaga's organization. The indictment alleged two counts: (1) conspiracy to distribute and to possess with intent to distribute 100 grams or more of heroin, and (2) possession of heroin with

-3-

intent to distribute, distribution of heroin, and aiding and abetting the same. Both counts alleged violations of 21 U.S.C. § 841(a)(1), which prohibits drug distribution.

The indictment further alleged for both counts that "death and serious bodily injury resulted from the use of such substance" based on Joslin's death. An appropriate finding of "death resulting" increases the sentence on each count to a mandatory minimum of twenty years and a maximum of life. See 21 U.S.C. § 841(b)(1)(B), (C).[1]

Pena initially pled not guilty to both charges. On November 30, 2011, Pena filed a motion arguing that "death resulting" was an element of the offenses and that as a result, the district court could not consider the mandatory minimum at a sentencing hearing unless the "death resulting" element was first found by a jury beyond a reasonable doubt. The government opposed the motion, arguing that "death resulting" was a not a necessary element of the indictment but a sentencing factor, which could properly be determined at sentencing by the court on a preponderance of the evidence standard. The government's choice was surely deliberate: it wanted to show "death resulting" under a

---

[1] Count 1 cited 21 U.S.C. § 841(b)(1)(B), which ordinarily carries a mandatory minimum of five years and a maximum of forty years, while Count 2 cited § 841(b)(1)(C), which ordinarily has no minimum and a maximum of twenty years. So, without any "death resulting" allegations, there would be no 20-year mandatory minimum on either charge.

far easier standard of proof and to prove it to a judge, not a jury.[2]

The day after the government filed its opposition, Pena filed a response. Pena's response stated:

> The defendant continues to maintain that punishment based on a "death resulting" finding must be premised on a jury conviction of this element on proof beyond a reasonable doubt. However, the defendant is willing to accept the government's position that the Superseding Indictment does not include "death resulting" as an element. <u>Given that view of the Superseding Indictment, the defendant is prepared to plead guilty to both counts forthwith and requests that the Court schedule a change of plea hearing</u>.

(emphasis added). The response was explicit that the plea was being entered in reliance on the prosecution's position that "death resulting" was not an element of the offense. There was no plea agreement with the prosecution. Nor was there ever any order or agreement to bifurcate the proceedings.

The district court scheduled a change of plea hearing, which began on January 27, 2012. After a continuance, the hearing was concluded on February 9, 2012. At the hearing, Pena admitted all of the facts relevant to each count other than the "death resulting" allegations. As to Count 2, Pena admitted only that he assisted in or arranged for the supply of heroin to Johnson on July

---

[2]    In a footnote, the government did argue that it retained the option to prove "death resulting" to a jury if it wanted a higher maximum sentence. It did not argue that it retained any such option to increase a minimum sentence.

30, 2009. In Pena's view, it was Liceaga's heroin, not his, and he aided and abetted Liceaga in getting the heroin to Johnson. Pena also argued that the 20-year mandatory minimum could not apply without a jury finding on "death resulting." The government made no objection to acceptance of the defendant's plea, even in light of the continued denial of the "death resulting" allegations.

The district court accepted the guilty plea. Pena argued that the government's representation that death resulting was not charged in the indictment meant that the government had waived the opportunity to seek the death-resulting enhancement. The prosecution again did not seek to reserve any right to use a sentencing jury to increase the minimum sentence if the government's assessment that "death resulting" was only a sentencing factor proved incorrect.

Pena also informed the court that if the court decided "death resulting" was a sentencing factor, he would probably seek to have an evidentiary hearing and to cross-examine witnesses. The defendant's incarceration continued.

On May 8, 2012, in light of the government's position, Pena filed a motion requesting an evidentiary hearing on the "death resulting" issue before his sentencing hearing. On July 18, 2012, the district court issued a memorandum opinion rejecting Pena's November 30, 2011 pre-plea motion arguing that the mandatory minimum could not apply unless the "death resulting" element was

-6-

tried before a jury.  See United States v. Pena, No. 10-10017-NMG, 2012 WL 2952771 (D. Mass. July 18, 2012).  The court rejected Pena's argument, concluding that "death resulting" was a sentencing factor.  It then turned to Pena's argument from his May 8 motion and granted his request for an evidentiary hearing.

The court held the evidentiary hearing on the "death resulting" issue on July 19, 2012.  After examining the witnesses, Pena's counsel raised two primary lines of argument at the hearing. The first was whether the autopsy by Dr. Henry Nields established that heroin actually caused Joslin's death, given that there were questions surrounding the reliability (for chemistry purposes) of the source of the victim's blood sample and given Dr. Nields's testimony that he could not say with certainty that the prescription drug and alcohol found in her system could not have caused the death even without the heroin.  The second, developed through counsel's cross-examinations, was the credibility of Johnson, who had an alternate supply of heroin and was himself a heroin user (and had used heroin the day he supplied it to Joslin). Pena challenged the credibility of Johnson's testimony that, among other things, he had not mixed his heroin from different sources and that he carried over no inventory of heroin but got a fresh supply daily.

In a carefully detailed written order, the court concluded that the government had proven by a preponderance of the

evidence that Joslin's death did result from Pena's heroin distribution. See United States v. Geoffrion, 910 F. Supp. 2d 337, 343 (D. Mass. 2012). The court found the testimony of Dr. Nields to be credible and that it was "more likely than not" that "Joslin died from accute intoxication by the combined effects of ethanol, opiates and citalopram, i.e., that the heroin used played a significant causal role in her death." Id. at 342.[3] The court also found that the evidence established by a preponderance that the heroin Joslin used was originally supplied by Pena or by other members of his conspiracy. Id.

The Supreme Court granted certiorari in Alleyne on October 5, 2012. The petition had been filed on March 14, 2012. The parties were aware of the grant of certiorari and the government discussed it at the sentencing hearing the next week.

On October 11, 2012, the district court held a sentencing hearing.[4] Based on calculations in the presentencing report, Pena

---

[3] Under the Supreme Court's recent decision in Burrage v. United States, 134 S. Ct. ___ (2014), this causation determination was insufficient to support a "death resulting" conviction. The Court held in Burrage that the "death resulting" enhancement requires a but-for causal relationship between the drugs and the victim's death. Id. at ___ (slip op. at 9). Under Burrage, the drug use must be an "independently sufficient cause" of the victim's death. Id. The district court, however, limited its finding to the conclusion that the heroin "played a significant causal role" in a death resulting from the "combined" cocktail of "ethanol, opiates and citalopram." Geoffrion, 910 F. Supp. 2d at 342.

[4] Apparently neither party requested a delay in sentencing in light of the grant of certiorari in Alleyne.

faced a base offense level of 38 under the Sentencing Guidelines if "death resulting" applied to his conviction, and a base offense level of 32 if "death resulting" was not established. After applying relevant increases and decreases, these alternative offense levels produced Guidelines ranges of 292-365 months or 151-188 months, respectively. At the hearing, Pena continued to argue that the higher range based on "death resulting" could not apply because the "death resulting" element had not been proven to a jury beyond a reasonable doubt and his plea did not admit to it.

The court rejected Pena's argument and, relying on its findings, used the higher Guidelines range based on "death resulting." It applied the "death resulting" increase to both counts, triggering a mandatory minimum of 20 years. Based on the higher Guidelines range and the mandatory minimum, it departed downward to a final sentence of 252 months (21 years) for Count 1, to be served concurrently with the statutory maximum sentence of 20 years for the aiding and abetting plea on Count 2.[5] The court described this sentence as "longer than the mandatory minimum sentence for a drug offense resulting in death" while still "about 15% below the low end of the applicable guideline range." It explained that, "although the defendant put in motion a tragic set

_____

[5] Because "death resulting" and drug quantity had not been found by a jury on Count 2, under <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466 (2000), they could not trigger an increase in the maximum sentence. As a result, 20 years was both the mandatory minimum and statutory maximum sentence for Count 2.

-9-

of events that resulted in the death of a young woman, a 21-year sentence is sufficient but not greater than necessary under these specific circumstances."

During this sentencing hearing, the prosecution requested that, if the court imposed a sentence above the mandatory minimum, it issue an alternative holding explaining that it would have done so at its discretion regardless of the mandatory minimum based on "death resulting." Defense counsel objected, saying the government had chosen its constitutional path and the time to make an upward departure argument would be at a resentencing if the Supreme Court's ultimate decision on the Sixth Amendment constitutional issue were to require one. The district court recognized that the prosecution was making the request and engaged the government in a lengthy colloquy about it, but ultimately declined to issue an alternative holding. Pena appealed.

Alleyne was decided on June 17, 2013, while Pena's appeal was pending. In Alleyne, the Supreme Court held that the Sixth Amendment right to a jury requires that any facts which would increase a mandatory minimum sentence are "element[s] of a distinct and aggravated crime" that must be found by a jury beyond a reasonable doubt. 133 S. Ct. at 2162-63.

Pena now argues, and the government agrees, that his sentence was imposed in violation of Alleyne. The parties agree that the sentence must be vacated and the case remanded. But they

have different views as to whether on remand a sentencing jury may be empaneled.

## II.

Some background on the decision in <u>Alleyne</u> is helpful to understand the issue on appeal and the different claims of fairness.

<u>Alleyne</u> is the most recent in a series of Supreme Court sentencing cases concerning defendants' Sixth Amendment rights to trial by jury, beginning in 2000 with <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466 (2000). In <u>Apprendi</u>, the defendant had pled guilty to, inter alia, an offense carrying a sentence of five to ten years. <u>Id.</u> at 470. After the guilty plea was entered, the prosecution sought an enhancement under a hate crime law. The district court held an evidentiary hearing and the court determined on a preponderance of the evidence standard that the defendant had met the requirements of the hate crime statute. <u>Id.</u> at 470-71. Accordingly, the court sentenced him to 12 years' imprisonment on that count, two years above the ordinary maximum for that offense without the hate crime enhancement. <u>Id.</u> at 471.

The Supreme Court reversed in a 5-4 decision. It articulated a distinction between "elements" of an offense, which the constitutional guarantee of the right to a trial by jury requires to be found by a jury beyond a reasonable doubt, and "sentencing factors," which could be found by a judge on a

-11-

preponderance standard.  Id. at 485-86.  Other than prior convictions, it held, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Id. at 490 (emphasis added).

Two years later, in Harris v. United States, 536 U.S. 545 (2002), the Court distinguished increases to mandatory minimums from the increases to sentencing range maximums it had considered in Apprendi.  In Harris, the defendant had been convicted of a drug trafficking crime involving a firearm.  Id. at 550-51. "[P]ossess[ing]" a firearm during a drug trafficking crime would trigger a five-year mandatory minimum; the minimum would increase to seven years for "brandish[ing]" the firearm during the crime. Id. at 551 (quoting 18 U.S.C. § 924(c)(1)(A)).  Based on a finding on a preponderance of the evidence standard, the district court determined that the defendant had brandished a firearm and sentenced him accordingly.  Id.  In another 5-4 decision, the Supreme Court affirmed.  The Court held that factors triggering mandatory minimums "need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt."  Id. at 568.  Justice Breyer, the fifth vote in the majority, recognized that Harris and Apprendi were not "easily distinguish[able]" and explained that he "cannot agree with the plurality's opinion insofar as it finds such a distinction."  Id. at 569 (Breyer, J.,

concurring in part and concurring in the judgment).  He went on to explain that he was joining with the plurality because he "continue[d] to believe" that Apprendi was wrongly decided, and that judges should be free to go above both statutory maximums and mandatory minimums without a jury finding.  Id. at 569-70.

In 2010, the Court again discussed the distinction between sentencing factors and elements in United States v. O'Brien, 560 U.S. 218 (2010), in the context of the same firearms provision that had been at issue in Harris.[6]  O'Brien's unanimous holding was limited to the narrow conclusion that whether a firearm was a machinegun -- a fact that determined mandatory minimums -- was an element of the offense.  Id. at 221, 235.  In a concurrence, however, Justice Stevens observed that "[t]he unanimity of our decision today does not imply that McMillan [v. Pennsylvania, 477 U.S. 79 (1986), and its successor case Harris] is safe from a direct challenge to its foundation."  Id. at 240 (Stevens, J., concurring).  He articulated his view that the "reluctant Apprendi dissenter" who had completed the bare majority in Harris -- that is, Justice Breyer -- "may no longer be reluctant."  Id. at 239.

The direct challenge to which Justice Stevens referred arrived in Alleyne.  There, the verdict form allowed the jury to

_____

    [6] The Court had also decided another strand of Apprendi-based cases in 2004 and 2005 with Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005), which rendered the federal Sentencing Guidelines advisory.

find that a firearm had been "[u]sed or carried" or "[b]randished" under the same firearms provision as Harris and O'Brien. The jury found the defendant guilty of "carr[ying]" a firearm but declined to make a finding of brandishing. Alleyne, 133 S. Ct. at 2155-56. The trial judge sentenced the defendant based on a higher mandatory minimum triggered by the judge's finding by a preponderance of the evidence that the defendant had "brandished" the weapon. Id. at 2156. The Supreme Court reversed. In a 5-4 decision, the Court held that "the principle applied in Apprendi applies with equal force to facts increasing the mandatory minimum," overruling Harris. Id. at 2160. The Court emphasized that these facts were elements that "necessarily form[] constituent part[s] of a new offense," or, put differently, were "element[s] of a separate, aggravated offense." Id. at 2162. As a result, the Court explained, those aggravating facts must "be submitted to the jury and found beyond a reasonable doubt." Id. at 2163.

### III.

The Alleyne rule applies to cases pending on direct appeal at the time it was decided. United States v. Harakaly, 734 F.3d 88, 94 n.4 (1st Cir. 2013). It is clear there was Alleyne error here. See Burrage v. United States, 134 S. Ct. ___, ___ (2014) ("[T]he 'death results' enhancement . . . is an element that must be submitted to the jury and found beyond a reasonable doubt." (citing Alleyne, 133 S. Ct. at 2162-63)). Since Alleyne errors are

-14-

of a constitutional dimension and Pena's claim of error is preserved, "the government must prove that the error was harmless beyond a reasonable doubt."  Harakaly, 734 F.3d at 95 (quoting United States v. Pérez-Ruiz, 353 F.3d 1, 17 (1st Cir. 2003)) (internal quotation mark omitted).

The government, to its credit, concedes that the Alleyne error here is not harmless, and rightly so: without a proper finding of "death resulting" by a jury, Pena would have been subjected to a lower sentencing range.  It is also clear that the Alleyne error does not vacate the conviction, established by Pena's guilty plea, on the drug charges.  See United States v. Yeje-Cabrera, 430 F.3d 1, 12-13 (1st Cir. 2005).

IV.

There is little precedent on the precise question presented here.  Both parties resort to broad principles.

Pena argues that we must remand the case to the district court for it to do the resentencing, and that empaneling a sentencing jury would be improper for several reasons.  First, Pena argues resentencing must be based on the elements of the crime to which he actually pled guilty.  He emphasizes that he did not plead to "death resulting."  The prosecution, he notes, did not object to this more limited plea, and the court accepted the plea.  He also says he relied on the government's position in entering the plea.  Pena says that the guilty plea has changed his pre-plea situation

-15-

in many ways and that the sentencing jury procedure the government seeks would unfairly favor the government.  At no time did he agree to bifurcating the guilt stage from the sentencing proceedings, and there was no order so bifurcating proceedings.  In addition, in his reply brief, Pena argues the government's procedure would violate his Fifth Amendment double jeopardy rights, citing Ohio v. Johnson, 467 U.S. 493, 501 (1984).  We discuss the double jeopardy concerns below.

The government argues that fairness requires it be given a chance to try again to prove "death resulting," this time to the correct decisionmaker, the jury -- but only a "sentencing" jury. It argues it should not be "penalized" for making the wrong guess on where the Supreme Court would come out on this issue.  It points out that "[w]hile the [empaneling] of a sentencing jury is a somewhat unusual procedure, it is far from unprecedented."  It notes that the question of guilt is often bifurcated from the question of criminal forfeiture, citing United States v. Keene, 341 F.3d 78, 81 (1st Cir. 2003), and United States v. DesMarais, 938 F.2d 347, 349-50 (1st Cir. 1991).  Likewise, it notes that capital cases are routinely bifurcated into a guilt phase and a sentencing phase, citing Sampson v. United States, 724 F.3d 150, 168 (1st Cir. 2013).

A.

We begin with common ground. A sentence must be based upon the crime of conviction. See Alleyne, 133 S. Ct. at 2162 ("It is obvious, for example, that a defendant could not be convicted and sentenced for assault, if the jury only finds the facts for larceny . . . ."). The only conviction here results from Pena's guilty plea.[7] It is also common ground that the government's request is unusual, and the ordinary practice is to remand to the district court for the judge to engage in resentencing. And unlike with capital cases, see 18 U.S.C. § 3593(b), the parties here have identified no specific statutory authorization for empaneling a sentencing jury on remand under these facts.

The government argues that its position on a sentencing jury is supported by opinions of the Third, Sixth, Seventh, and Ninth Circuits, and one district court, in which those courts approved the use of sentencing juries to remedy sentencing errors after Apprendi. The government cites United States v. Booker, 375 F.3d 508, 514 (7th Cir. 2004), aff'd, 543 U.S. 220 (2005); United States v. Henry, 282 F.3d 242, 253 (3d Cir. 2002) (conviction based on guilty plea); In re Figueroa, 463 F. App'x 99, 100 (3d Cir. 2012); United States v. Montiel-Sanchez, 171 F. App'x 599, 600 (9th

_____

[7] Consideration of other properly proven relevant conduct, including other crimes, is appropriate at the sentencing phase, see, e.g., United States v. Watts, 519 U.S. 148, 149 (1997) (per curiam) (allowing consideration of acquitted conduct when properly proven).

-17-

Cir. 2006); <u>United States</u> v. <u>Cooney</u>, 26 F. App'x 513, 529 (6th Cir. 2002); and <u>Figueroa</u> v. <u>United States</u>, 2013 WL 499473, No. 7:13CV00038, at *1 (W.D. Va. Feb. 8, 2013).[8] We briefly discuss these cases, which arose in circumstances different from those presented here. We think the government's other cases are not adequate to warrant a sentencing jury here.

The most serious discussion of the sentencing jury issue is by Judge Posner in the <u>Booker</u> case, which arose in a different context. There, Judge Posner predicted that the Sentencing Guidelines as applied in that case would violate the Sixth Amendment as interpreted in <u>Blakely</u> v. <u>Washington</u>, 542 U.S. 296 (2004). The court did not rule on whether the mandatory Guidelines remained valid but ruled that if they did, "the judge can use a sentencing jury." <u>Booker</u>, 375 F.3d at 515.[9] In this context, the Seventh Circuit concluded that the <u>defendant</u> had a right to have a jury determine both the quantity of the drugs he possessed and the

---

[8] The government cites a published Ninth Circuit opinion, <u>United States</u> v. <u>Ameline</u>, 376 F.3d 967 (9th Cir. 2004). This opinion was withdrawn and replaced by another, <u>United States</u> v. <u>Ameline</u>, 400 F.3d 646 (9th Cir. 2005), which did not comment on whether empaneling a sentencing jury would be proper on remand.

[9] Judge Posner, in that context, also commented:
There is no novelty in a separate jury trial with regard to the sentence, just as there is no novelty in a bifurcated jury trial, in which the jury first determines liability and then, if and only if it finds liability, determines damages. Separate hearings before a jury on the issue of sentence is the norm in capital cases.
<u>Booker</u>, 375 F.3d at 514.

facts underlying the determination that he obstructed justice, unless the parties agreed on a sentence which did not require judicial factfinding.[10]

More importantly, Judge Posner anticipated some of the problems inherent in the government's request in this case, as we discuss further below.  As Judge Posner explained:

> Of course[, the sentencing jury] will not work if the facts that the government would seek to establish in the sentencing hearing are elements of a statutory offense, for they would then have to be alleged in the indictment, and to re-indict at this stage would present a double-jeopardy issue.  We can hardly attempt to resolve such issues on this appeal; the parties have not briefed or argued them.

Booker, 375 F.3d at 514.  Although the indictment here did include the "death resulting" allegations, from defendant's point of view, the prosecution abandoned those allegations in the indictment when it took the position that they were not elements of the crime.

The unpublished Ninth Circuit case is readily distinguishable on its facts, as it did not involve any issue of the district court's sentencing authority, but rather of the court's refusal to allow the defendant to present certain evidence during the sentencing phase of an already bifurcated jury trial. Montiel-Sanchez, 171 F. App'x at 600.  The unpublished Third

---

[10]  The Supreme Court ultimately handled the matter differently than predicted, rendering the Guidelines system advisory, in Justice Breyer's opinion in Booker.  See Booker, 543 U.S. at 245.

Circuit case did not comment on the validity of the sentencing jury that had been empaneled, but merely held that the "extraordinary" writ of prohibition was an improper vehicle for challenging the sentence. In re Figueroa, 463 F. App'x at 100. And the unpublished Sixth Circuit case did not require the district court on remand to empanel a sentencing jury, but merely acknowledged that it was possible to do so and that other options also existed. Cooney, 26 F. App'x at 529. What remains is a single Third Circuit case, United States v. Henry. In Henry, the defendant had explicitly requested that the district court empanel a sentencing jury after Apprendi was decided, before his sentencing. 282 F.3d at 246. The Sixth Amendment right belongs to the defendant. See U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." (emphasis added)); Gannett Co. v. DePasquale, 443 U.S. 368, 383 (1979) (explaining that Sixth Amendment public trial right belongs to defendant, and citing as analogous the Sixth Amendment rights to a jury trial and a speedy trial). Here, it is the defendant who opposes such a jury.

Alleyne suggests the answer to our problem, but it does not face this problem head-on, as our precise issue was not presented. The Supreme Court in Alleyne remanded "for resentencing consistent with the jury's verdict," which did not include the aggravating factor. 133 S. Ct. at 2164. Admittedly, unlike here,

-20-

the prosecution in _Alleyne_ did ask the jury to find that the firearm had been brandished and the jury declined to do so. But that difference does not help the government's position here.

The _Alleyne_ Court also determined that the aggravating factor -- "brandishing" a firearm -- constituted an element of a "separate, aggravated" crime and that the mandatory minimum it triggered could not be imposed without a finding on proof beyond a reasonable doubt. See _id._ at 2162. There is no dispute that the "death resulting" here should similarly be viewed as an element of a _separate_ crime. Pena has not been convicted of this separate crime, but only of the crimes for which he has entered and the district court has accepted a guilty plea. An accepted guilty plea is a conviction and, like a jury verdict, is conclusive. _Kercheval_ v. _United States_, 274 U.S. 220, 223 (1927). Moreover, the Court's opinion in _Alleyne_ did not turn on the jury's findings on its verdict form, but on the fact that, in violation of the defendant's Sixth Amendment rights, it was the judge who had made the "brandishing" finding on a lesser standard of proof that led to the higher mandatory minimum.

Decisions of the Courts of Appeals after _Alleyne_ have remanded for resentencing by the court. We are not aware of any court that has been confronted with facts analogous to those here. But in at least nine circuit court cases that have found reversible _Alleyne_ error, the sentence was vacated and remanded for

-21-

resentencing by the district judge.[11]  We are aware of no case, and the parties have cited none, remanding for use of a sentencing jury after a reversible Alleyne error.

Post-Apprendi cases are also instructive, because "Alleyne is an extension of the Apprendi doctrine."  Harakaly, 734 F.3d at 94.  The remedy for an Apprendi error was usually a simple remand to the district court for resentencing.  This court remanded in United States v. Bailey, 270 F.3d 83, 90 (1st Cir. 2001), in which we found an Apprendi error that was not harmless.  Even on plain error review, several of our sister circuits likewise held that a remand for resentencing by the district judge on the charge of conviction was required.[12]

---

[11]  See United States v. O'Neil, No. 12-2237, 2014 WL 26289 (8th Cir. Jan. 3, 2014); United States v. Jordan, 531 F. App'x 995 (11th Cir. 2013); United States v. DeLeon, No. 10-4064, 2013 WL 4850300 (4th Cir. Sept. 12, 2013); United States v. Donovan, Nos. 11-1843, 11-2163, 11-2450, 11-2055, 2013 WL 4792866 (6th Cir. Sept. 9, 2013); United States v. Claybrooks, 729 F.3d 699 (7th Cir. 2013); United States v. Mubdi, No. 10-5008, 2013 WL 4517026 (4th Cir. Aug. 27, 2013); United States v. Lake, 530 F. App'x 831 (10th Cir. 2013); United States v. Lira, 725 F.3d 1043 (9th Cir. 2013); United States v. Lara-Ruiz, 721 F.3d 554 (8th Cir. 2013).  We note that Mubdi and Lake involved convictions by guilty pleas.  In fairness, we also note that there is no indication the government raised in any of these cases the claim of entitlement to a sentencing jury.

[12]  See, e.g., United States v. Doe, 297 F.3d 76, 93 (2d Cir. 2002) (on plain error review, remanding for resentencing by district court "for exactly that charge to which [defendant] pled" where defendant pled guilty to drug crimes involving unspecified quantity but court had found quantity by a preponderance); United States v. Campbell, 279 F.3d 392, 397, 402 (6th Cir. 2002) (on plain error review, remanding for resentencing by district court where defendant had pled guilty to drug charges with no specified

-22-

So far we have established that the request for a sentencing jury here is unusual and has no clear support. We now turn to why we think the request must be rejected. Pena's only crimes of conviction are the two admitted drug offenses, without any admission of guilt on "death resulting," and the sentence should be based on those crimes. Pena's initial position was that he was not guilty, thereby invoking his right to require the government to prove the drug offenses beyond a reasonable doubt. He altered that to a plea of guilty on the two drug charges only, in reliance on the government's position. Pena thus gave up the chance that the government would not be able to prove guilt; he accepted guilt, and accepted he would be sentenced for that guilt. Indeed, he has already been incarcerated for nearly two years toward his sentence since entering the guilty plea; had he gone to trial and been acquitted, he would not have served that time. We see no inequity in holding the government to the position it took. Absent an agreed upon reservation, we generally do not relieve either side because its prediction about how sentencing will play out turns out to be wrong.

---

quantity and district court had made quantity findings); United States v. Cernobyl, 255 F.3d 1215, 1221 (10th Cir. 2001) (same); United States v. Nicholson, 231 F.3d 445, 453, 455 (8th Cir. 2000) (same, after jury conviction).

In addition, the government's request raises a thicket of potential and thorny double jeopardy issues, into which it is wiser not to enter. The government's request also is likely to lead to situations of withdrawal of guilty pleas. As such, the government's request undercuts the finality of criminal proceedings.

We touch on the double jeopardy concerns, and the need to avoid deciding the issue if we are able. "The law of double jeopardy is quite complicated . . . ." United States v. Pierce, 60 F.3d 886, 890 (1st Cir. 1995). It is true that double jeopardy does not usually apply to convictions which have not become final. See United States v. Ramirez-Burgos, 44 F.3d 17, 18 (1st Cir. 1995) (observing that the Double Jeopardy Clause safeguards against a second prosecution following a "final conviction" for the same offense). If this conviction were final, the constraint of double jeopardy would be clearer. It is also true that those double jeopardy safeguards do not usually apply to resentencing. See United States v. Dominguez, 951 F.2d 412, 416-17 (1st Cir. 1991). But the effect of Alleyne and its predecessors is to preclude certain sentences from being imposed unless the elements supporting them have been proven to a jury beyond a reasonable doubt. The Supreme Court has not yet dealt with the double jeopardy issues in this context, much less in these transition cases where what was

once thought to be a sentencing issue has been recognized instead to be an element of a crime.

If the prosecution were now to <u>reindict</u> Pena for the enhanced "death resulting" crime, it would run into double jeopardy problems, as it would be seeking to reindict Pena with a greater crime after a conviction and sentence for a lesser included offense. <u>See</u>, <u>e.g.</u>, <u>Brown</u> v. <u>Ohio</u>, 432 U.S. 161, 169 (1977). The prosecution's argument here raises the risk of doing an end-run around the Double Jeopardy Clause, by characterizing the jury as a "sentencing" jury. If the government were to reindict, that jury would not merely decide a sentence; it would first have to decide whether the government had proved all the elements of the "death resulting" crime beyond a reasonable doubt. Specifically, it would have to decide whether the government had proved that Pena "knowingly or intentionally" (1) manufactured, distributed, dispensed, or possessed with intent to manufacture, distribute, or dispense (2) a controlled substance (3) that was "100 grams or more of a mixture or substance containing a detectable amount of heroin," and (4) that death or serious bodily injury resulted from the use of that controlled substance. <u>See</u> 21 U.S.C. § 841(a), (b)(1)(B).[13]

---

[13]  We refer to the elements of the crime charged in Count 1. Count 2 would not require proof of quantity.

The prosecution's proposed course of action here seeks to end-run those requirements, and to obtain the benefit of the plea's admissions to the essential elements of the two drug crimes, which are also among the essential elements (the first three elements listed above) of the aggravated "death resulting" crime. Indeed, the prosecution's brief is explicit that the sentencing jury would take the admissions of guilt from the plea for the other elements and then decide only the "death resulting" issue. Under the doctrine of constitutional avoidance, we do not decide the double jeopardy issues associated with the government's request, but note them and avoid them. See Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013).

Faced with that advantage gained by the government, the defendant predictably could move to withdraw his plea. See United States v. Allard, 864 F.2d 248, 250 n.3 (1st Cir. 1989) (adverting to remedy of allowing defendant to withdraw guilty plea when the "construction afforded an information or indictment . . . differ[s] materially from a defendant's understanding of the charges at the time he pled").[14]  Indeed, counsel for Pena at oral argument said

_____

[14]  A defendant may not change a guilty plea after sentencing. See Fed. R. Crim. P. 11(e). But here, the sentence must be vacated and the case remanded. Under those circumstances, we assume, without deciding, the Rule 11(e) prohibition on withdrawal of guilty pleas would not apply. See United States v. Jerchower, 486 F. App'x 68, 71 (11th Cir. 2012).

he would consider doing that, if he were to lose his appeal and the government were to obtain a sentencing jury.[15]

Thus, the government's proposed remedy of a sentencing jury would increase incentives to withdraw pleas, which would also undercut the public interest in certainty and finality. These interests are particularly strong as to guilty pleas in our legal system. See United States v. Dominguez Benitez, 542 U.S. 74, 82 (2004) (observing the "particular importance of the finality of guilty pleas"). As the Supreme Court stated in United States v. Timmreck, 441 U.S. 780 (1979):

> [T]he concern with finality [in the context of collateral relief] . . . has special force with respect to convictions based on guilty pleas. Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas.

Id. at 784 (quoting United States v. Smith, 440 F.2d 521, 528-29 (7th Cir. 1971) (Stevens, J., dissenting)) (internal quotation mark omitted).

---

[15] We do not, of course, address the outcome of any such motion. We merely note that if the plea were withdrawn and the prosecution unsuccessful, the nearly two years Pena has already spent in prison following his plea could not be given back to him.

The prosecution tries to avoid our conclusion by saying both parties and the court contemplated there would be follow-on proceedings and its hands are now being unfairly tied. We disagree. There was no doubt there would be sentencing proceedings after Pena's guilty plea. But if the prosecution contemplated that it would be free to present the "death resulting" theory to a sentencing-only jury if the Supreme Court ultimately held that "death resulting" was an element of the crime, it was remarkably silent on the issue. Had it articulated such a position, there may well not have been a guilty plea.

## V.

The district court's sentencing order is <u>vacated</u> and the case <u>remanded</u> for resentencing by the district judge in accordance with this opinion.