CANADY, J., concurring in part and dissenting in part.
I agree with the majority that under Alleyne v. United States , 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), the factual findings provided for in section 775.082(1)(b), Florida Statutes (2016), must be made by the jury and that the absence of such jury findings in this case requires reversal of the sentence imposed under section 775.082(1)(b) 1. and resentencing in the trial court. But I dissent from the majority's direction regarding the remand, which requires imposition of the less severe sanction available under the statute. Because the issue of the remedy on remand has not been briefed in this case, I would simply direct remand for resentencing rather than preclude jury proceedings that might result in imposition of the more severe sentence under the statute.
Although we have not had the benefit of briefing on this issue, I am deeply skeptical that the direction given by the majority precluding jury proceedings is either necessary or appropriate. As the majority opinion reflects, Williams's counsel earlier suggested impaneling a jury to make the factual determination provided for in section 775.082(1)(b). And the majority has pointed to no basis in our law establishing that suggestion to be inconsistent with any legal requirement. The majority's reliance on Plott v. State , 148 So.3d 90 (Fla. 2014), is entirely unwarranted. In Plott , we simply directed that the district court remand for resentencing if it determined that the Apprendi / Blakely error was not harmless. 148 So.3d at 95. Our opinion is silent concerning whether a jury should be impaneled to consider the factual determinations necessary to support an upward departure sentence on remand.
The majority's direction restricting the proceedings on remand is inconsistent with the general rule "that a resentencing must proceed 'as an entirely new proceeding,' and that a 'resentencing should proceed de novo on all issues bearing on the proper sentence.' " State v. Collins , 985 So.2d 985, 989 (Fla. 2008) (citation omitted) (quoting Wike v. State , 698 So.2d 817, 821 (Fla. 1997), and Teffeteller v. State , 495 So.2d 744, 745 (Fla. 1986) ). It necessarily follows from that rule that if a jury determination is required regarding facts bearing on the sentence in a resentencing proceeding, the State should have the opportunity to prove those facts to a jury.
Notably, the majority's decision on this point seems irreconcilable with the manner in which we are treating the death cases that have been reversed based on the majority's decision in Hurst v. State , 202 So.3d 40 (Fla. 2016), cert. denied , --- U.S. ----, 137 S.Ct. 2161, 198 L.Ed.2d 246 (2017). In Hurst , we "remand[ed] for a new penalty phase proceeding." 202 So.3d at 69. And we have summarily rejected as *295 "without merit" claims based "on double jeopardy and due process grounds" that the State "is precluded from seeking the death penalty" in Hurst resentencing proceedings. Hurst v. State , No. SC17-302, 2017 WL 1023762, at *1 (Fla. Mar. 16, 2017) (unpublished). Although we did not explain our conclusion, the Arizona Supreme Court has provided an extensive constitutional analysis for its holding that double jeopardy did not bar death sentence proceedings after reversal of death sentences for Ring errors. See State v. Ring , 204 Ariz. 534, 65 P.3d 915, 928-32 (2003), on remand from Ring v. Arizona , 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Affording the State an opportunity to obtain death sentences in new jury proceedings in the death cases is inconsistent with the majority's decision here denying the State an opportunity to obtain the more severe sentence available under section 775.082(1)(b).
Unable to identify any support for its position in our jurisprudence, the majority cites the decision of the First Circuit in United States v. Pena , 742 F.3d 508 (1st Cir. 2014), and relies on the invocation-more aptly, incantation-in that decision of "the doctrine of constitutional avoidance." Majority op. at 293 (quoting Pena , 742 F.3d at 519 ). The majority announces that it is "hesitant to wade into 'a thicket of potential and thorny double jeopardy issues.' " Id. at 293 (emphasis added) (quoting Pena , 742 F.3d at 518 ). Without deciding that double jeopardy doctrine actually requires that the less severe sentence be imposed on remand, the majority mandates imposition of that less severe sanction because it asserts there might be a double jeopardy problem with the more severe sentence.
But this use of the constitutional avoidance doctrine is not consistent with how we have understood and applied that doctrine. Under the doctrine, hesitancy and doubt alone are not a ground for decision. In the absence of a legal basis that otherwise resolves the point at issue, the Court must confront and decide the constitutional question-assuming that issue has been properly presented for decision. Yet here the majority does not base its decision on an alternative ground that avoids the constitutional issue. See Singletary v. State , 322 So.2d 551, 552 (Fla. 1975) (relying on "the settled principle of constitutional law that courts should not pass upon the constitutionality of statutes if the case in which the question arises may be effectively disposed of on other grounds"). Nor does the majority avoid a potential constitutional problem by adopting a statutory interpretation that presents no constitutional issue rather than another interpretation that is constitutionally problematic. See State v. Giorgetti , 868 So.2d 512, 518 (Fla. 2004) (recognizing "the canons of statutory construction requiring us to interpret the statutes in a way as to avoid any potential constitutional quandaries"). Instead, the majority's decision is planted firmly in the air.
The constitutional avoidance doctrine is "a principle of judicial restraint." In re Holder , 945 So.2d 1130, 1133 (Fla. 2006) ; see also Lyng v. Northwest Indian Cemetery Protective Ass'n , 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."). The doctrine recognizes that the judicial branch should only invalidate legislation-thereby thwarting the action of a coordinate branch of government-when no other course of action is properly available. But the majority here has turned the doctrine on its head. Rather than avoiding judicial action that thwarts legislative action, the majority has deployed the doctrine *296 to preclude the opportunity to carry out the legislative purpose embodied in section 775.082(1)(b).
In applying this misshaped version of the constitutional avoidance doctrine, the majority strains to find doubt and simply ignores the elephant in the room. It fails to explain how summary rejection of double jeopardy claims in the Hurst context was appropriate if this case now presents "a thicket of potential and thorny double jeopardy issues." No basis is stated by the majority-and no basis is apparent-for distinguishing the double jeopardy implications of a resentencing following reversal for an Alleyne error from the implications following reversal for an Apprendi , Blakely , Ring , or Hurst error-all of which involve failing to present an issue to the jury that must be decided by the jury.
POLSTON and LAWSON, JJ., concur.