Filed 2/19/14  P. v. Recio CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. JULIO RECIO, Defendant and Appellant. | B247010 (Los Angeles County Super. Ct. No. KA099339) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert M. Martinez, Judge.  Affirmed.

James Bisnow for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson, Chung L. Mar and Jonathan J. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Julio Recio of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)).[1] He admitted a prior strike (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and a prior serious felony conviction (§ 667, subd. (a)(1)). He was sentenced to 13 years in state prison and appeals from the judgment. We affirm.

## BACKGROUND

*Prosecution Evidence*

In August 2011, Baldwin Park Police Officer William Zendejas provided backup to another officer, Mark Berumen, who arrested defendant. Defendant was driving a Honda Accord at the time. Officer Zendejas also attended court proceedings involving defendant in November 2011 and January 2012.

On September 8, 2012, when his shift ended at 6:30 p.m., Officer Zendejas changed into civilian clothing and left the station driving his personal car, followed by another off-duty officer, Ruben Guerrero. As Officer Zendejas reached Pacific Avenue, a silver Honda Accord pulled to the right and stopped oddly, too far from the curb to be parking. Officer Zendejas noticed that the driver was smirking. He and Officer Guerrero later identified defendant as the driver. Officer Zendejas later identified the Honda Accord as the same car defendant had been driving when arrested in August 2011.

Defendant tailgated Officer Guerrero for a time on Pacific, then ran a red light at the intersection with Vineland and continued on Pacific. Officer Zendejas turned onto Vineland. Officer Guerrero saw defendant make a fast U-turn on Pacific. Soon Officer Zendejas saw him approaching on Vineland quickly from behind. Defendant pulled alongside in the lane for opposing traffic, smirking, and

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

turned his vehicle toward Officer Zendejas' car. The Officer quickly braked and swerved, coming within inches of a collision. Defendant merged in front of Officer Zendejas, braked suddenly, and glanced in his rear view mirror. Officer Zendejas braked and swerved to avoid defendant. Officer Zendejas then passed him, heading north onto Merced. As he passed, defendant grinned and said, "Whoa."

When Officer Zendejas stopped at a red light, he saw defendant approaching again quickly from behind. The Officer pulled into a gas station. Defendant passed, driving erratically, and pointed his finger at Officer Zendejas mimicking a handgun.

Officer Zendejas returned to the police station and reported the incident. Another officer who had participated in defendant's August 2011 arrest, Sergeant Mark Adams, was reminded of defendant's case from Officer Zendejas' description of the Honda Accord. He asked Officer Zendejas if defendant was the driver. Officer Zendejas then recalled defendant and said, "I knew I recognized him." He identified defendant in a photo six-pack and identified a photograph of defendant's car.

*Defense*

Defendant's girlfriend, Linda Flores, testified that she was with defendant on September 8, 2012, until he dropped her off at a nail salon around 5:00 p.m. He picked her up around 7:00 p.m.

3

**DISCUSSION**

I. *Failure to Excuse Juror No. 3*

Defendant contends that the trial court erred in not excusing a juror who revealed, after the close of evidence, that she recognized two prosecution witnesses, Officers Zendejas and Berumen. We disagree.

After both sides rested, in a hearing outside the presence of the jury, Juror No. 3 informed the court that she was a bartender and recognized Officers Zendejas and Berumen. When the court asked if she had developed a friendship with them, she replied, "Yeah. They've been coming in for, like, a year-and-a-half," but she never interacted with them socially outside of work.

The court then permitted the prosecutor and defense counsel to inquire of the juror. In response to the prosecutor's sole question, Juror No. 3 stated that she did not think that her prior contact with the officers would affect how she reached a verdict. She added: "I mean, I do know them pretty well for a year-and-a-half. I just didn't recognize their names when they were read but, when I saw their faces, I knew who they were."

Defense counsel then asked how long the juror's conversations with the officers would last. The juror replied about five to ten minutes, when she would serve drinks. In response to questions by the court, the juror said that the officers came in around every other week. She knew Officer Zendejas was a police officer, but she did not know Officer Berumen was. Asked if she had a concern about encountering them again depending on how she voted in this case, she responded, "It would be awkward but I don't think I would have that big of a concern." She affirmed that she would "do what [her] conscience tells [her] to do in this case," and that she felt "comfortable continuing as a juror." Both the prosecutor and defense counsel stated that they had no further questions. The court told the juror,

4

"We'll see you Monday," and wished her a good weekend. After the juror left, the court recessed and told counsel that it would have the jury instructions for them in five or ten minutes. There were no further reported proceedings that day, and no further mention in the record of Juror No. 3.

The record shows that defense counsel did not move to excuse the juror from the case or object to her continuing to serve. Therefore, the claim that the court should have excused her is forfeited. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1242.) Defendant argues that the forfeiture rule should not apply because after permitting questioning by counsel, the court directed the juror to return on Monday and thus "[i]t does not appear . . . that the trial court . . . permitted argument on the issue, or even recognized that any issue of possible bias existed." However, it is apparent that after the juror left the courtroom defense counsel had the opportunity to object to the juror remaining on the case, and again had the opportunity to object when the trial resumed the following Monday. Nonetheless, he did not object at either time. Under these circumstances the forfeiture rule applies.

In the alternative, defendant argues that his trial counsel was ineffective. To show that his attorney was ineffective, defendant must prove that his attorney's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to defendant would have been reached. (*Strickland v. Washington* (1984) 466 U.S. 668, 690 (*Strickland*).) When an ineffective assistance claim is more easily disposed of on the ground that the defendant has failed to show a reasonable probability of a different result, that course should be followed. (*Strickland, supra,* 466 U.S. at p. 697.) Here, even if defense counsel had challenged Juror No. 3, it is not reasonably probable that the trial court would have granted the challenge. "A trial court may excuse a prospective juror for

5

'[a]ctual bias,' which is defined as 'the existence of a state of mind on the part of the juror in reference to the case, or to any of the parties, which will prevent the juror from acting with entire impartiality, and without prejudice to the substantial rights of any party.' (Code Civ. Proc., § 225, subd. (b)(1)(C); see Pen. Code, § 1046 ['Trial juries for criminal actions are formed in the same manner as trial juries in civil actions.'].) 'The term "actual bias" may include a state of mind resulting from a juror's actually being influenced by extraneous information about a party.' [Citation.]" (*People v. Gutierrez* (2009) 45 Cal.4th 789, 805-806.)

In the present case, every other week for the past year-and-a-half, Officers Zendejas and Berumen patronized the bar where Juror No. 3 worked, and she had contact with them for about five or ten minutes on those occasions. But Juror No. 3 testified that she did not think that her prior contact with the officers would affect how she reached a verdict, that "[i]t would be awkward [depending on how she voted]," but that she did not have "that big of a concern [in terms of encountering the officers at work again]," that she would "do what [her] conscience tells [her] to do in this case," and that she felt "comfortable continuing as a juror." Given the juror's responses indicating the lack of any actual bias, defendant cannot demonstrate that it is reasonably probable that if defense counsel had challenged the juror, the court would have granted the challenge. (See *People v. Riggs* (2008) 44 Cal.4th 248, 281 ["credible assurances that the juror can set aside any preexisting knowledge and opinions about the case [based on pretrial publicity] and judge it fairly based upon the evidence presented at trial are sufficient to protect defendant's right to an impartial jury"].)

II. *Denial of Defendant's Motion to Strike*

Citing *Alleyne v. United States* (2013) 570 U.S. ___ [133 S.Ct. 2151], defendant contends that the trial court violated his 6th amendment right to a jury trial when it denied his motion to strike his prior strike conviction. We disagree.

Before sentencing, defendant admitted his prior strike conviction, a May 2001 conviction for robbery (§ 211), for which he had received a two-year prison sentence. He then moved to strike that conviction for sentencing. His only other prior conviction was in January 2012, for carrying a concealed weapon in a vehicle with a prior felony conviction (former § 12025, subd. (b)(1), now § 25400, subds. (a)(1) & (c)(1)), for which he received probation and 170 days in county jail. The latter conviction resulted from the arrest in which Officer Zendejas participated. Defendant committed the current offense on September 8, 2012, approximately 8 months after this latter conviction.

In denying the motion to strike, the court reasoned: "Mr. Recio, I've looked at your earlier case involving possession of [a firearm and] in that case, following the jury trial, the very same motion was made and granted. Judge Blades thought that, under the circumstances, a sentence should not have been doubled [by a strike conviction]. That was about 13 months ago. Eight months after he struck the prior, this crime happened. You've been to prison. You were on probation this time . . . for being a felon in possession of a firearm. Now *you have been convicted of assaulting a police officer for the apparent reason that the police officer did his job*. I cannot find any unusual circumstances that justify the striking of the prior[]. It took you eight months to violate again after your prior was stricken and here we are asking a second time to strike priors in the interest of justice, and *after you have . . . assaulted a police officer with a motor vehicle*. The

7

court does not find that the interest of justice would be promoted by doing so and the motion to strike the priors is denied." (Italics added.)

Seizing upon the trial court's comment that defendant's current conviction was for "assaulting a police officer for the apparent reason that the police officer did his job," defendant contends that the trial court conducted illegal judicial fact finding under *Alleyne, supra,* namely finding that defendant knew Officer Zendejas was a police officer when he committed the assault. Defendant contends that under *Alleyne,* such judicial fact finding is improper.

In *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490, the United States Supreme Court held that under the Sixth Amendment, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Alleyne*, *supra,* ___ U.S. ___ [133 S.Ct. 2151, 2155], the court held that the same requirement applies to "any fact that increases the mandatory minimum" sentence for a crime.

Defendant's argument that the trial court violated *Alleyne* relies on the mistaken premise that denying a motion to strike a strike conviction is somehow the equivalent of increasing the mandatory minimum sentence for the current crime. That is incorrect. Here, defendant admitted his prior strike conviction. By virtue of that admission, his mandatory minimum sentence was double the low term for the current offense. (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1).) By moving to strike his prior strike conviction in order to be sentenced as a non-strike offender, defendant was seeking to *reduce* his mandatory minimum sentence. By denying the motion to strike, the trial court did not increase the mandatory minimum punishment, but rather simply refused to reduce it. Thus *Alleyne,* which applies only to factfinding that increases the mandatory minimum sentence, is inapposite. (See *People v. Murphy* (2004) 124 Cal.App.4th 859, 863 ["Even if we

8

assume for the sake of argument that the determination of whether defendant fell outside the spirit of the three strikes law could be deemed 'factfinding,' it is not the sort of factfinding that had to be performed by a jury under *Apprendi* and *Blakely* [*v. Washington* (2004) 542 U.S. 296]".) Thus, the trial court did not violate *Alleyne* in denying defendant's motion to strike.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.


We concur:


MANELLA, J.


EDMON, J.*


*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.