NOT DESIGNATED FOR PUBLICATION

No. 112,572

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TAYLOR ARNETT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Opinion on remand filed
May 4, 2018. Affirmed.

*Samuel Schirer*, of Kansas Appellate Defender Office, for appellant.

*Alan T. Fogelman*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek
Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., SCHROEDER, J., and HEBERT, S.J.

PER CURIAM:  After granting a petition for review in this case, the Kansas
Supreme Court held that restitution may be ordered against a defendant in a criminal case
if the loss to the victim was proximately caused by the crime of conviction. *State v.
Arnett*, 307 Kan. 648, Syl. ¶ 7, 413 P.3d 787 (2018). The court reversed this panel's
decision that the State failed to show a sufficient causal connection for restitution
between Defendant Taylor Arnett's plea to and conviction for conspiracy to commit
burglary and the financial loss to two victims whose homes were burglarized by her

1

coconspirators, who stole a substantial amount of personal property. See *State v. Arnett*, No. 112,572, 2015 WL 6835244 (Kan. App. 2015) (unpublished opinion). The court found both that the panel applied too strict a causation standard and that the Wyandotte County District Court made sufficient factual determinations to establish proximate cause supporting its restitution order for $33,248.83. 307 Kan. at 654-56.

Because the panel reversed the restitution order on causation grounds, it did not address Arnett's alternative arguments against the order. 2015 WL 6835244, at *3. The Supreme Court has remanded the case for the panel to now consider those arguments: (1) The State failed to establish the amount of the property loss at the restitution hearing; (2) the statutory restitution scheme violates § 5 of the Kansas Constitution Bill of Rights; and (3) the scheme cannot be reconciled with a criminal defendant's right to have a jury find certain facts enhancing punishment as required by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). *Arnett*, 307 Kan. at 656.

We now take up those points and find them unavailing. We, therefore, affirm the district court's restitution order.

As to the first, Arnett did not dispute the amount of requested restitution at the district court hearing. She, therefore, cannot do so for the first time on appeal. See *State v. Thach*, 305 Kan. 72, 81, 378 P.3d 522 (2016).

As to the second, Arnett cites § 5 of the Kansas Constitution Bill of Rights recognizing "[t]he right of trial by jury shall be inviolate." She argues that at common law, crime victims could seek compensation from defendants only through civil actions for damages. Under the common law, as outlined by Arnett, the victims would be entitled to have juries hear those actions, and the defendants would have a correlative right to request a jury trial. Arnett contends restitution impermissibly compromises that right and provides no "quid pro quo" substitute, thereby violating § 5 of the Bill of Rights.

2

The argument fails. First, restitution does not legally supplant civil actions. A crime victim may still file a civil suit against a criminal defendant to recover money damages. Most don't simply because few criminal defendants have ready assets (or realistic prospects for acquiring assets) sufficient to make the effort worthwhile. Either party, however, could request a jury trial.

More generally, Arnett's argument fails because the substitute remedy or quid pro quo requirement applies when the Legislature extinguishes or substantially curtails a common-law cause of action for damages, thereby implicating both § 5 and § 18 of the Kansas Constitution Bill of Rights. Section 18 provides: "All persons, for injuries suffered in person, reputation, or property, shall have remedy by due course of law, and justice administered without delay." In tandem, those provisions require that the Legislature provide an adequate substitute remedy for the curtailment or elimination of a common-law claim. See *Miller v. Johnson*, 295 Kan. 636, 654-55, 289 P.3d 1098 (2012). The prototypical example has been the State's workers compensation system that replaced common-law tort actions for employment related injuries with an administrative process largely aimed at providing prompt, if more limited, recompense without regard to fault or negligence. See *Injured Workers of Kansas v. Franklin*, 262 Kan. 840, 852, 942 P.2d 591 (1997). Workers compensation was deemed a constitutionally adequate substitute remedy, despite the elimination of jury trials, because it afforded financial relief to a significantly greater number of injured workers than did fault-based negligence law.

Arnett has no grounds to assert a constitutional deprivation of any of her rights otherwise protected in §§ 5 and 18 as a result of the district court's restitution order. In short, restitution does not deprive Arnett of a remedy for any injury she has suffered. Here, Arnett inflicted the injury. The Legislature was not obligated to provide her or any other criminal defendant with some quid pro quo or substitute remedy when it required payment of restitution. If restitution had been enacted as the sole remedy for crime

3

victims seeking compensation from convicted perpetrators, those victims might have an argument their rights under § 5 and particularly under § 18 had been impermissibly curtailed. But Arnett—as a convicted criminal defendant—can make no corresponding argument that a restitution order violates her constitutional rights.

Finally, Arnett contends *Apprendi* and its application in *Alleyne v. United States*, 570 U.S. 99, 103, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), prohibit judicially imposed restitution as a violation of her right to jury trial under the Sixth Amendment to the United States Constitution and her right to due process under the Fourteenth Amendment. Those cases recognize that a fact used to impose a punishment greater than either a statutory mandatory minimum punishment or a statutory maximum punishment must be found by a jury beyond a reasonable doubt. *Alleyne*, 570 U.S. at 103; *Apprendi*, 530 U.S. at 476. Arnett's argument fails for two reasons.

First, restitution is not considered punishment in the same way incarceration or a fine paid to the State would be. Rather, it is a rehabilitative and compensatory tool designed to aid both convicted criminals and their victims. See *State v. Huff*, 50 Kan. App. 2d 1094, 1100, 336 P.3d 397 (2014); *State v. Heim*, No. 111,665, 2015 WL 1514060, at *2 (Kan. App. 2015) (unpublished opinion) ("Restitution is intended to fairly compensate crime victims and to further the rehabilitation of defendants by instilling in them some sense of the costs their wrongdoing has inflicted."). Although a district court typically enters a restitution order during a sentencing hearing, that doesn't make the order a form of punishment.

Even if restitution were considered punitive and, thus, punishment, Arnett's argument fails. The Kansas statutes governing restitution impose neither mandatory minimum amounts nor maximum amounts. See K.S.A. 2017 Supp. 21-6604(b)(1); K.S.A. 2017 Supp. 21-6607(c)(2). A mandatory minimum would be a specified amount a convicted defendant would have to pay a victim even if the victim had little or no

4

financial loss. The statutes require no such obligation. The statutes, likewise, impose no cap or upper limit on restitution that might be exceeded only in exceptional circumstances or upon proof of statutorily identified facts. So even if restitution were punitive, the scheme does not entail mandatory minimums or maximums triggering the protections set out in *Alleyne* and *Apprendi*.

Arnett has presented no arguments that undercut the district court's restitution order.

Affirmed.