J-S41010-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DALE SHELTON | : | |
| | : | |
| Appellant | : | No. 457 WDA 2023 |

Appeal from the PCRA Order Entered April 12, 2023
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0016217-2008

BEFORE: PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:                **FILED: JANUARY 30, 2024**

Dale Shelton appeals from the order entered in the Allegheny County Court of Common Pleas on April 12, 2023, dismissing his serial petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546 as untimely. After careful review, we affirm.

This Court has previously provided a summary of the underlying facts of this case as follows:

> On September 24, 2008, several people were shot. Sandra Stewart was shot with a .40-caliber bullet and died as a result of this incident.
>
> ....
>
> [Shelton] testified that [three or four weeks] prior to the incident on September 24, 2008, he and Devin Scott had an altercation.

---

[*] Former Justice specially assigned to the Superior Court.

Scott approached [Shelton] and hit him in the back of the head with something. [Shelton] turned and Scott aimed a gun at his face. Scott threatened to kill him and demanded money. Scott stole everything [Shelton] had on him, as well as his mother's car. [Shelton] did not contact the police because he feared Scott would retaliate, killing him or his family. After the robbery, [Shelton] obtained a .40-caliber firearm from Maurice Williams.

....

On the day of the shooting, [Shelton] was with Maurice and Kevin Williams. They were going to [obtain a refund for fake drugs they had purchased earlier]. [Shelton] and Maurice dropped off Kevin Williams. They drove on Curtain Avenue towards Warrington Avenue when [Shelton] saw Devin Scott. This was the first time [Shelton] had seen Scott since Scott robbed him and threatened his life with a gun.

[Shelton] testified that Scott looked directly at him. They made eye contact and [Shelton] panicked. He was scared because he knew that Scott always carried a firearm, Scott had threate[n]ed his life, and the car in which [Shelton] was riding was coming to a stop at a stop sign by Scott. When the car stopped, [Shelton] said he got out, attempting to run away from Scott. He saw Scott pull out a gun and fire it at him. Appellant obtained his gun and fired it in response....

Kevin Williams testified that he was outside on Curtain Avenue at the time of the incident. He heard shots down around Bey's Store so he ran to get his illegal .45-caliber firearm. He saw Scott running down Curtain Avenue shooting backwards toward Warrington Avenue. Kevin Williams started shooting towards Scott. Then, he hid the gun....

Devin Scott, an associate of gang members, testified that he left Bey's Store and walked up the sidewalk towards Climax Street. He was on house arrest with a window of time to go to the hospital. Rather, he went to the store, carrying an illegal firearm. He testified that he heard shots behind him from the Warrington Avenue area, so he started running and shooting his nine-millimeter weapon over his shoulder. He threw his nine-millimeter weapon in the bushes and his shirt in the garbage. Law enforcement captured him and charged him with crimes related

to this shooting. He denied ever robbing [Shelton]. Scott was the only person who could definitively testify that [Shelton] shot first.

There were several people firing weapons during this incident.... Fourteen .40-caliber casings were found on the sidewalk, in [a] parking lot, and on the street. The fourteen spent .40-caliber casings were discharged from the same gun.

*Commonwealth v. Shelton*, 174 WDA 2018 (Pa. Super. filed December 27, 2019) (unpublished memorandum).

On November 19, 2010, a jury convicted Shelton of one count each of third-degree murder, criminal attempt – homicide, aggravated assault, firearms not to be carried without a license, and six counts of recklessly endangering another person. On April 12, 2011, the trial court sentenced Shelton to an aggregate term of twenty-five to fifty-one years' incarceration. Shelton's post-sentence motion was denied. This Court subsequently dismissed Shelton's appeal for failure to file a brief.

New counsel filed a PCRA petition, requesting reinstatement of Shelton's direct appeal rights. The PCRA court granted the petition and Shelton's appellate rights were reinstated. On direct appeal, we affirmed the judgment of sentence. On December 11, 2014, the Supreme Court of Pennsylvania denied allowance of appeal.

On October 20, 2015, Shelton filed a *pro se* PCRA petition. Counsel was appointed and filed an amended petition. The PCRA court subsequently issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. Counsel filed a response. However, a few days later Shelton

submitted a filing styled as a "Motion to Proceed *Pro Se*", requesting that he be permitted to represent himself during the remainder of the proceedings. On October 20, 2016, the PCRA court dismissed the PCRA petition, but scheduled a hearing on Shelton's request to proceed *pro se*. **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

Prior to the **Grazier** hearing, Shelton filed a counseled notice of appeal. The PCRA court subsequently granted Shelton's request to represent himself. After significant back and forth, the appeal was ultimately discontinued at Shelton's request.

On June 26, 2017, Shelton filed an amended PCRA petition. In response, the Commonwealth asserted the amended petition was essentially an untimely second PCRA petition.

On August 31, 2017, the PCRA court issued notice of its intent to dismiss Shelton's amended petition as untimely. In response, Shelton argued that his amended petition related back to his first PCRA petition. Further, Shelton emphasized that the PCRA court had granted him leave to amend his timely first PCRA petition while his appeal of the order denying that petition was pending. On January 4, 2018, the PCRA court dismissed the petition as untimely. On appeal, a panel of this Court concluded that the PCRA court was without jurisdiction or ancillary authority to grant Shelton the right to amend his first PCRA petition, as the PCRA court did so after it had already issued a final order dismissing Shelton's first PCRA petition. As such, we found the

litigation of Shelton's first PCRA petition properly concluded when Shelton discontinued his appeal before this Court. Accordingly, we concluded that Shelton's June 2017 PCRA petition was in fact an untimely second PCRA petition and affirmed the order dismissing that petition.

On July 31, 2020, Shelton filed a third PCRA petition. The PCRA court issued notice of its intent to dismiss the petition as untimely pursuant to Rule 907. Shelton filed a response in which he argued the governmental interference exception to the PCRA time-bar applied, based on the PCRA court improperly leading Shelton to believe that he could amend his first PCRA petition. The PCRA court entered an order indicating it was moved by Shelton's argument that a timeliness exception had been demonstrated by governmental interference and admitting that it had contributed to the interference of Shelton's rights to a complete post-conviction review. The PCRA court directed Shelton to file a pleading setting forth all claims that were not previously litigated. In response, on December 14, 2020, Shelton filed a PCRA petition setting forth numerous claims, including his argument regarding governmental interference. At the PCRA court's direction, the Commonwealth filed an answer addressing Shelton's claims. Shelton then filed a response to the Commonwealth's answer. The PCRA court subsequently issued notice of its intent to dismiss the petition without a hearing. Shelton filed a response. After review, the PCRA court entered an order finding the issues raised in the PCRA petition untimely. However, the court found Shelton raised a colorable

argument that the governmental interference exception to the timeliness requirement may apply. As such, the PCRA court directed the Commonwealth to file a response addressing the issue of governmental interference. The Commonwealth filed an answer in which it concluded Shelton's claims of governmental interference were unavailing. The PCRA court subsequently issued a second notice of its intent to dismiss the petition without a hearing, stating Shelton's allegations regarding governmental interference do not have merit. After Shelton filed a response, the PCRA court dismissed the petition as untimely. On appeal, this Court vacated the order dismissing the PCRA petition as untimely, finding Shelton had timely raised the governmental interference claim at the first opportunity to do so. As such, his third petition fell under a timeliness exception. Accordingly, we remanded with instructions for the PCRA court to consider Shelton's substantive claims.

On remand, the PCRA court ordered Shelton to file an amended PCRA petition. After receiving a few extensions, Shelton filed an amended PCRA petition, in which he raised a claim of ineffective assistance of trial counsel and an illegal sentence claim. The Commonwealth filed an answer. The PCRA court then issued notice of its intent to dismiss the petition, and later dismissed the amended PCRA petition. This timely appeal followed.[1]

_____

[1] Shelton filed a timely notice of appeal on April 19, 2023, as indicated by the date listed on the notice of appeal and the entry on the trial court docket. However, the trial court's timestamp on the notice of appeal is dated April 29,
*(Footnote Continued Next Page)*

Shelton raises the following claims on appeal:

Whether the PCRA court abused its discretion in[] finding that [Shelton]'s ineffectiveness of counsel claim was waived; refusing to grant [Shelton]'s March 27, 2023 motion for leave to amend in order to cure a purported lack of a certification of witnesses; finding that [Shelton]'s February 10, 2023 amended first PCRA petition was subject to the Lawson standard for second or successive petitions; finding that counsel was not ineffective for failing to request a jury instruction; finding that [Shelton]'s claim of an **Alleyne** violation was not supported by the record.

Appellant's Brief, at 2 (unnecessary capitalization omitted).

Our standard of review is settled. We review the denial of a post-conviction petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. **See Commonwealth v. Faulk**, 21 A.3d 1196, 1199 (Pa. Super. 2011). To be eligible for relief pursuant to the PCRA, Shelton must establish, *inter alia*, his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S.A. § 9543(a)(2). **See** 42 Pa.C.S.A. § 9543(a)(2). He must also establish the issues raised in the PCRA petition have not been previously litigated or waived. **See** 42 Pa.C.S.A. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so

_____

2023. That date appears to be an error, as the notice of appeal was transmitted to this Court on April 24, 2023, as indicated by this Court's timestamp on the notice of appeal. In any event, the timeliness of the appeal would not be implicated even if the notice of appeal was filed on April 29, 2023. Our docket indicates the notice of appeal was filed on April 19, 2023 in order to match the trial court docket.

- 7 -

before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b).

Prior to reaching the merits of Shelton's issues, we must determine which, if any, issues Shelton has preserved for our review. It is well-established that any issue not raised in a Rule 1925(b) concise statement will be deemed waived for appellate review. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998). In his concise statement, Shelton only raised a substantive claim of ineffective assistance of trial counsel and a claim of an **Alleyne**[2] violation. The issues related to waiver of Shelton's ineffective assistance claim,[3] the March 27, 2023 motion for leave to amend and application of the Lawson standard to the amended petition were not included in the concise statement. Instead, they were raised for the first time in Shelton's appellate brief. As these claims were not raised before the PCRA court, they are waived. **See Lord**, 719 A.2d at 309. We will now proceed to address the issues that were preserved in Shelton's concise statement.

_____

[2] **Alleyne v. United States**, 570 U.S. 99 (2013).

[3] In the order appealed from, the trial court stated it found Shelton's claim of ineffective assistance of counsel to be waived and, in addition, substantively without merit. However, in its opinion, the trial court addresses the ineffectiveness claim on its merits only, with no reference to waiver. An appellate court may affirm a PCRA court's decision on any grounds if the record supports it. **See Commonwealth v. Dozier**, 208 A.3d 1101, 1103 (Pa. Super. 2019). Accordingly, the PCRA court's treatment of this issue does not affect our disposition.

First, Shelton argues the PCRA court abused its discretion in finding his trial counsel was not ineffective for failing to request a jury instruction for voluntary manslaughter.

We presume counsel is effective, and a PCRA petitioner bears the burden to prove otherwise. *See Commonwealth v. Bennett*, 57 A.3d 1185, 1195 (Pa. 2012). The test for ineffective assistance of counsel is the same under both the Federal and Pennsylvania Constitutions. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Commonwealth v. Kimball*, 724 A.2d 326, 330-332 (Pa. 1999). A petitioner must demonstrate: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *See Commonwealth v. Solano*, 129 A.3d 1156, 1162-63 (Pa. 2015). A failure to satisfy any prong of the test for ineffectiveness requires rejection of the claim. *See id*. at 1163.

A person commits voluntary manslaughter if he kills another while "acting under a sudden and intense passion resulting from serious provocation by: (1) the individual killed, or (2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed." 18 Pa.C.S.A. § 2503(a)(1)-(2).

> This Court has explained, with respect to a "heat of passion" voluntary manslaughter instruction:

A voluntary manslaughter instruction is warranted only where the offense is at issue and the evidence would support such a verdict. To support a verdict for voluntary manslaughter, the evidence would have had to demonstrate that, at the time of the killing, appellant acted under a sudden and intense passion resulting from serious provocation by the victim. If any of these be wanting – if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder.

*Commonwealth v. Sanchez*, 82 A.3d 943, 989 (Pa. 2013) (citations and brackets omitted).

Shelton testified on his own behalf at trial. In doing so, Shelton stated that when he saw Devin Scott on September 24, 2008, it was the first time he had seen Scott since Scott had robbed him at gun point three or four weeks earlier. *See* N.T., Jury Trial, 11/19/10, at 389. Shelton testified that he got out of the car to run for his safety because he was scared. *See id*. at 390, 393. He testified that Scott shot at him first, and that is why he fired back. *See id*. at 391, 393. Shelton therefore argued he was acting in self-defense when he shot and killed the victim. *See id*. at 402-403, 415. Shelton was adamant that he was not mad after the initial incident, but rather upset. *See id*. at 427 ("I wasn't mad in the heated anger like I wanted to do something. I was upset.").

Based on the record before us, we find no voluntary manslaughter instruction was warranted. The evidence does not reflect that Shelton had been seriously provoked when he saw Scott on the day of the shooting.

Shelton also had not explained how the three to four weeks in between his interactions with Scott was not sufficient time to cool off from the first incident.

"It is well settled that the decision whether to seek a jury instruction implicates a matter of trial strategy." **Commonwealth v. Lesko**, 15 A.3d 345, 401 (Pa. Super. 2011) (citation omitted). Based on the record before us, Shelton has failed to establish that counsel did not have a reasonable trial strategy for failing to request a voluntary manslaughter instruction. Rather, as it is clear Shelton's trial strategy was a claim of self-defense, it was reasonable for counsel to focus on that avenue of justification. Accordingly, this issue is without merit.

Finally, Shelton argues the PCRA court abused its discretion in finding that Shelton's claim of an **Alleyne** violation was not supported by the record.

In **Alleyne**, the United States Supreme Court held that a criminal defendant may not be sentenced to a mandatory minimum sentence unless the factfinder found the underlying facts triggering the imposition of the mandatory to have been proven beyond a reasonable doubt.

Shelton asserts he was sentenced under 42 Pa.C.S. § 9712, which has since been found to be unconstitutional pursuant to **Alleyne**. **See Commonwealth v. Valentine**, 101 A.3d 801, 812 (Pa. Super. 2014). At the time of Shelton's sentencing, Section 9712 required the imposition of a five-year mandatory sentence for violent crimes committed by an individual visibly possessing a firearm.

After a review of the record, it is clear Shelton was not sentenced to a mandatory minimum pursuant to Section 9712. The sentencing hearing made no mention of the applicability of Section 9712. On the contrary, there were multiple arguments made at the hearing about the discretion of the trial court in imposing sentence, and what sentence was recommended by each party. Defense counsel stated that the guidelines were in the standard range, which would be eleven years' incarceration for the third-degree murder charge. *See* N.T., Sentencing Hearing, 4/12/11, at 9. The Commonwealth recommended an aggregate sentence of thirty-two to sixty-four years' incarceration. *See id*. at 40-41. The trial court then stated its reasoning for the sentence it would be imposing and imposed an aggregate sentence of twenty to forty years' incarceration. S*ee also* id. at 41-45. The sentencing order does not include any indication that a mandatory minimum was considered or imposed. Finally, the Department of Corrections Form DC-300B, has a section titled Mandatory Sentence, with a check box for "Yes" or "No" below it. The box for "No" is checked off on Shelton's form.

Since Shelton was not sentenced under Section 9712, his claim has no merit.

As Shelton's issues are either waived or meritless, we affirm the order dismissing Shelton's PCRA petition.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

FILED: 1/30/2024